**TRANSPORT INSURANCE COMPANY, Appellant,**

v.

**William C. McCULLY, Appellee.**

No. 11944.

Court of Civil Appeals of Texas, Austin.

June 14, 1972.

Rehearing Denied June 28, 1972.

Flahive & Ogden, T. P. Flahive, Austin, for appellant.

Byrd, Davis, Eisenberg & Clark, Terry. L. Weldon, Jack C. Eisenberg, Austin, for appellee.

SHANNON, Justice.

The primary question in this workmen's compensation case is whether appellee, who had a heart attack on the job, suffered a compensable accidental injury.

Upon trial to a jury, judgment was entered in effect that appellee, William C. McCully, was totally and permanently disabled as the result of a heart attack which he sustained on the job in the course and scope of his employment with Braniff International. We will affirm that judgment.

Appellee suffered the heart attack on July 10, 1970 while working at the airport in Austin. His job with Braniff was not one performing manual labor as that term is traditionally understood. His job title was "Customer Service Agent" and involved three different duties which he performed on a rotating basis. Those duties were being in control of: (1) the forms desk, (2) air freight, and (3) communications and the ramp. A brief description of those duties follows.

A Customer Service Agent working at the forms desk keeps abreast of all weather news which he conveys to the flight crews. Also, he figures the weight load of each plane before take off.

One in charge of air freight handles customer requests for service and information which may come in person or by telephone. He is also in charge of all freight for a particular flight and computes the tariff for each shipment.

The duties of one in charge of communications and the ramp consists of sending and receiving all information pertaining to flights, and of keeping a log of this information. Also upon the arrival or departure of a plane he must be at the ramp to supervise and assist the unloading or loading.

Though each Customer Service Agent serves in each of these capacities on a revolving basis, each helps his fellow agents during rush periods. As a consequence, no matter what his duty on a particular day, an agent would most probably perform some tasks in each of the several capacities.

A resume of appellee's activities preceding the heart attack follows. On July 10, appellee came to work at 2:45. Although he was at the forms desk he did a number of the other jobs since it was, according to him, "an unusually heavy day." Among those extra chores was the loading of thirty or forty bags of luggage occasioned by the jamming of the conveyor belt. After loading this baggage, appellee returned to his desk and began writing out two domestic air freight shipments by hand as no typewriter was available. At the same time, appellee was talking to a man on the telephone about shipping a dog to Germany. During the same period there were seven or eight persons trying to make freight shipments, and there were two men from the incoming flight who were at appellee's desk demanding that appellee locate

their lost baggage. At the ticket counter lines of customers had formed to the opposite wall.

All of these events happened in about two hours. About four fifteen or four forty-five appellee experienced a pain in his left shoulder and arm of such severity that he stopped what he was doing. After the initial pain, appellee felt "a little better" but in finishing up his work felt some chest pain. However, he did load another cart of bags, pulled it outside, and pushed an empty cart in. In response to a question which inquired if he experienced pain in loading the second cart of bags appellee replied that from the initial pain he continued to have pain.

After his half-hour dinner break, appellee returned to work hoping that he could make it and not wanting to leave his fellow agents with the heavy load. He left the job about fifteen minutes early, went home to bed, and was hospitalized for his heart condition the next morning.

The defense called Braniff's local manager, Kenneth L. Rippenkroeger, who testified that although he had no specific recollection of the events of July 10, the statistics kept by Braniff showed that July 10 was an "average" day. Rippenkroeger did testify on cross-examination that appellee and his fellow agents did handle one hundred and one passengers with their baggage and personal problems, forty-one pieces of cargo and twenty-four mailbags, together with any lost baggage complaints, and any telephone calls during that time, and that all of this activity commenced and ended within a thirty-six minute period.

■ Appellant would characterize the question for decision as one of whether mental stress alone, extending for a two hour period with no specific incident, is a sufficient showing to sustain the judgment. Appellant answers the question in the negative, and says Olson v. Hartford Accident and Indemnity Company, 477 S.W.2d 859 (Tex.1972) is controlling. We do not agree.

The facts in this case differ substantially from those in Olson. In Olson the plaintiff had three or four irritating or frustrating experiences on the job over a nineteen day period, and there was no showing of physical strain or overexertion. In the case at bar the events described above happened within a two hour period. Appellee also testified that he loaded and unloaded a considerable amount of baggage. Appellee had the severe pains immediately after the harassed two hour period.

The "undesigned, untoward event" in this appeal was the appellee's heart attack which he experienced about two hours after he went to work. The "definite time, place and cause" referred to in Olson is that two hour period of physical strain and mental stress which occurred immediately prior to the heart attack. Contrary to appellant's argument, Olson does not require that the compensation claimant shoulder the near impossible burden of proving which specific task during the two hour period precipitated his attack. It is proof enough to show all of these happenings in addition to physical strain over the two hour period followed by physical pains to establish a compensable injury.

Appellant also complains that there was no evidence or insufficient evidence in reasonable medical probability to establish causation between appellee's employment and his heart attack. Dr. Glen Journeay, appellee's family physician, and Dr. Robert F. Anderson, appellee's cardiologist, testified by deposition and in person relative to appellee's heart condition. With respect to causation of appellee's heart condition, Dr. Journeay testified, "Knowing Mr. McCulley, I think it would be reasonable to say that his mental stress might very well precipitate relative insufficiency on the blood supply."

Dr. Journeay further testified, "So, coming back to McCully, I think it is certainly possible that emotional stress could have precipitated this thing, I think it is even probable that it did."

On cross-examination, Dr. Journeay was asked, "All right, let me ask you this question. Is it just as probable that Mr. Mc-Cully's pipes just got filled up at this particular time, and without any excess emotional stress he had an infarct? Is that just as probable as the probable of the emotional stress?"

His answer was,

"I don't think so, and I don't think so for this reason. That I feel like he would have probably been experiencing anginal pain for some period of time prior to the infarction, with effort or what-not, if this had been a very gradual build-up. In other words, if the thing is gradually occluding, then we reach some stage at which he is going to have periods of relative insufficiency, he should start showing some anginal pain, he may go to an infarction. We don't have any history of any angina so this suggests that the acute infarction was a discrete specific event that occurred. And this is the way I would interpret it rather than just a very gradual build-up."

Appellant relies on Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.1966) and Parker v. Employers Mutual Liability Ins. Co. of Wis., 440 S. W.2d 43 (Tex.1969) both of which are workmen's compensation cases involving the problem of proving causation between a job connected incident and a cancerous condition. In *Myers* it was stated that "Casual connection . . . must rest in reasonable probabilities; otherwise, the inference that such actually did occur can be no more than speculation and conjecture."

Appellee argues plausibly that he made out a case under *Myers*. He contends that a fair construction of Dr. Journeay's testimony is that in his opinion, based upon reasonable medical probability, appellee's emotional stress caused his heart damage on July 10, and that being so, this medical testimony was sufficient to raise the issue of causation.

We prefer, however, to ground our decision on this point on the authority of Insurance Co. of North America v. Kneten, 440 S.W.2d 52 (Tex.1969). In that case the workman claimed total and permanent disability as the result of an injured heart allegedly caused by an electric shock. The medical testimony was that the electric shock "could have" been a contributing factor to the heart attack, and that it was a "strong possibility" that it was the cause of the attack. The defense argued that there was no evidence of causation. The majority opinion of the Supreme Court held, it seems, that the "possibility" testimony from the physician taken with the factual circumstances of the case were sufficient to raise the issue of causation. See Southern Methodist University, Musslewhite, Medical Causation Testimony in Texas: Possibility Versus Probability, 23 Sw.L.J. 622 (1969).

█ Appellant also assails the court's charge by several points of error, one being that the court erred in submitting a definition of circumstantial evidence for the reason, appellant says, that in heart attack cases, casual connection is "one of science, determined by testimony of expert medical professionals." An examination of appellant's objections and exceptions to the court's charge does not show that appellant objected to the inclusion of the definition of circumstantial evidence, and any complaint was consequently waived. Rule 272, Texas Rules of Civil Procedure.

█ Appellant also complains that special issue number one and the court's definition of "heart attack" did not restrict the jury to finding a "heart attack" caused by mental stress only.

Special issue number one and the definition submitted by the court read as follows:

"*Issue No. 1*

Do you find from a preponderance of the evidence that William C. McCully had such heart attack on July 10, 1970 in the course of his employment with Braniff International?

A heart attack is in the course of employment if it is produced or precipitated by an employee's work or the conditions of his employment. Otherwise a heart attack is not in the course of employment, even if it occurs on the job.

Answer 'He did have a heart attack in the course of employment,' or 'He did not have a heart attack in the course of employment.' "

As appellee's evidence demonstrated physical exertion, as well as mental strain, the wording of special issue number one and the accompanying definition were not erroneous.

Appellant charges, finally, that special issue number one does not track the pleadings. Appellee went to trial on his original petition which alleged generally that appellee "became incapacitated from performing the usual tasks of a workman." Appellant filed no special exception to require appellee to plead his injury more specifically. Under the state of the trial pleadings, appellee is in no position to complain on appeal that special issue number one did not "track" the petition.

The judgment is affirmed.