TRANSPORTATION INSURANCE
COMPANY, Petitioner,

v.

Joe J. MAKSYN, Respondent.

No. B-7820.

Supreme Court of Texas.

Feb. 28, 1979.

Rehearing Denied April 4, 1979.

Beckmann, Stanard & Olson, Melvin A. Krenek, San Antonio, for petitioner.

Hardberger, Branton & Herrera, Inc., Frank Herrera, Jr., San Antonio, Kronzer, Abraham & Watkins, W. James Kronzer, Houston, for respondent.

POPE, Justice.

The question presented is whether Joe J. Maksyn's "anxiety depression" qualified as a compensable occupational disease within the meaning of article 8306, section 20, Texas Revised Civil Statutes Annotated. The trial court rendered judgment on a jury verdict for Maksyn for total and permanent incapacity and the court of civil appeals has affirmed. 567 S.W.2d 845. We reverse the judgment and render judgment that plaintiff take nothing, because section 20, as amended to be effective August 30, 1971, affords coverage for repetitious physical, but not for repetitious mental traumatic activities.

Transportation Insurance Company appealed to the district court from the Industrial Accident Board's award for thirty-six weeks of total disability. Mr. Maksyn cross-acted and recovered a judgment on a jury verdict for total and permanent inca-

pacity. The point before us is that there is no evidence which supports the jury finding "that Joe J. Maksyn has or had an occupational disease as a result of repetitious physical traumatic activities extending over a period of time." More specifically stated, we must determine whether damage or harm caused by a repetitious mental traumatic activity, as distinguished from a physical activity, can constitute an occupational disease. The issues and relevant instructions submitted to the jury are stated in the footnote.[1]

Joe Maksyn began working as a copy boy for the Express News Publishing Company in 1932 at age 17. He progressively advanced to positions as assistant merchandise manager, display advertising salesman, administrative executive, assistant general manager, and production manager. He described his functions during 1974 as those of an advertising service manager. He had always worked at least fifty-five hours a week, and during about half of the time from 1932 to 1974 he worked sixty-five hours a week. He worked on Saturdays, holidays, parts of Sunday, always took work home and had phone calls about problems at home and at night. Maksyn described his work after 1946 as pressure work, "all of the newspaper work is pressure work." During 1967 through 1969 he was doing a great deal of late night work, and his chief work was to eliminate errors in the publica-

tion. He dealt only with problems. "So the pressure was quite great . . . ." In late August and early September, 1974, his chief assistant was absent a week on an emergency trip; a trainee proved incapable of taking over, so he assumed double detail work. During that time, he missed lunch some days and did not go to dinner. He kept a record for his last week of work which he described as hectic. It showed that he worked a total of eighty-seven hours. He testified that during that time he was weak, had pressure in his head, felt like he was going to blackout, was frightened, felt dizzy, felt all of his energy was gone. His physician told him that he was physically and mentally exhausted. Then for about three weeks, he took some of his vacation time, but did a few hours work at the office on some days. His employer in September, 1974, asked him, then at age sixty, to take an early retirement. Mr. Maksyn's situation was such that after forty-three years of work, he had succumbed to the pressure, mental strain, overwork, and exhaustion from his managerial duties which culminated in hypertension, nervousness, vertigo, anxiety depression, and disability to perform his work in publishing two newspapers a day. There was an abundance of evidence that mental stimuli produced Mr. Maksyn's condition but no evidence that any physical traumatic activity produced it. Our question is whether mental stimuli are enough to bring Mr. Maksyn

1. "OCCUPATIONAL DISEASE" means any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom but does not mean ordinary diseases of life to which the general public is exposed except where such diseases follow as an incident to the "occupational disease." An "Occupational Disease" shall also include damages or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment; provided, that the date of the cumulative injury shall be the date disability was caused thereby.

"DISEASE IN THE COURSE OF EMPLOYMENT" means any occupational disease having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or

about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere.

\* \* \* \* \* \*

ISSUE NO. 1

Do you find that Joe J. Maksyn has or had an occupational disease as a result of repetitious physical traumatic activities extending over a period of time?

Answer "Yes or "No."

Answer: ___yes___

If you have answered "Yes" to Issue No. 1, then answer Issue No. 2; otherwise do not answer.

ISSUE NO. 2

Do you find that the occupational disease sustained by Joe J. Maksyn arose out of and in the course of employment?

Answer "Yes" or "No."

Answer: ___yes___

within the definition of an occupational disease. He makes no claim and there is no proof that he sustained an accidental injury.

An understanding of section 20, which describes a compensable occupational disease, requires a comparison of the whole section, as amended in 1971, with the statute as it was before the amendment. Prior to the 1971 amendment, workers were entitled to compensation upon claims for two kinds of injuries. They could assert claims for an accidental injury and also for an occupational disease. After 1971, the provisions concerning occupational diseases were substantially changed. The pre-1971 section had an exclusive list of compensable occupational diseases; after 1971 the section more broadly made occupational diseases compensable by its comprehensive definition of occupational diseases. The amended statute is:

Sec. 20. (1) Wherever the terms "Injury" or "Personal Injury" are used in the Workmen's Compensation Laws of this State, such terms shall be construed to mean damage or harm to the *physical structure of the body* and such diseases or infections as naturally result therefrom. (2) The terms "Injury" and "Personal Injury" shall also be construed to mean and include "Occupational Diseases" as hereinafter defined. (3) Whenever the term "Occupational Disease" is used in the Workmen's Compensation Laws of this State, such term shall be construed to mean any disease arising out of and in the course of employment which causes damage or harm to the *physical structure of the body* and such other diseases or infections as naturally result therefrom. (4) An "Occupational Disease" shall also include damage or harm to the *physical structure of the body occurring as the result of repetitious physical traumatic activities* extending over a period of time and arising in the course of employment; provided, that the date of the cumulative injury shall be the date disability was caused thereby. (5) Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident to an "Occupational Disease" or "Injury" as defined in this section. [The numbers for the sentences and the emphases are added.]

We also need to examine the amended statute, sentence by sentence. The first sentence of section 20 has not been changed since 1947. Since that sentence was not changed by the legislature in 1971 at the time it was making major changes in the remaining sentences of the statute, we conclude that the settled law that had developed under the first sentence is also intact. That law was that an injury is defined and understood as one that is an undesigned, untoward event that is traceable to a definite time, place, and cause. In other words it is the result of an accident. *Olson v. Hartford Accident & Indemnity Co.*, 477 S.W.2d 859 (Tex.1972); *Texas Employers Ins. Ass'n v. McKay*, 146 Tex. 569, 210 S.W.2d 147 (1948); *Solomon v. Massachusetts Bonding & Ins. Co.*, 347 S.W.2d 17 (Tex.Civ.App.—San Antonio 1961, writ ref'd). The first sentence also extends coverage to and includes damage or harm to the physical structure of the body. The term "physical structure of the body" was construed in *Bailey v. American General Ins. Co.*, 154 Tex. 430, 279 S.W.2d 315 (1955), to include coverage for an iron worker who suffered a severe neurosis after seeing his co-worker fall from a scaffold to his death. Bailey, however, became entangled in a cable and escaped death by falling onto the roof of a building. The event produced in Bailey such a disabling neurosis, an anxiety reaction, that he was incapable of pursuing his trade. Bailey recovered compensation on the basis of an accidental injury—not an occupational disease. The court permitted coverage as an accidental injury to the outer limits of the term "physical structure of the body."[2] The ascertain-

---

**2.** The phrase "physical structure of the body", as it is used in the statute, must refer to the *entire* body, not simply to the skeletal structure or to the circulatory system or to the digestive system. It refers to the *whole*, to the complex of perfectly integrated and interdependent

able single event, though caused by mental stimuli, supported Bailey's contention that he suffered an accidental injury. The law which permitted such broad coverage for damage to the body as a whole and as an accidental injury, in our opinion, was not changed by the 1971 amendment of section 20 because the first sentence of section 20 was not changed. The meaning of an "injury" and of "physical structure of the body" were left undisturbed by the changes that the legislature made to the rest of section 20 in 1971. Maksyn has not brought himself within the *Bailey* case that recognized the event as an accidental one, that is, one that was traceable to a definite time, place, and cause.

The second sentence of the amended section is transitional. The sentence, as it existed before 1971,[3] was slightly changed, but its meaning was the same. Both before and after 1971, the sentence recognized that the term "Occupational Disease," was something different from and in addition to the ordinary meaning of "Injury" and "Personal Injury," and the sentence announces that "Occupational Diseases" will next be defined which the rest of the statute does. It is apparent, therefore, that the legislature recognized that workers still had the protection for both accidental and occupational injuries after 1971, but the definition of an occupational disease was being changed. The third sentence states that an occupational disease means (1) any disease (2) that arises out of or in the course of employment, and (3) causes damage or harm to the physical structure of the body. The disease must cause harm to the physical structure of the body, and the phrase "physical structure of the body" surely means the same as it means in the first sentence.

■ The fourth sentence is crucial. It uses the term "physical structure of the body" for the third time, but each time, the statute uses the phrase as the effect or the result of some cause. The cause, "occurring as the result of," expressed in the fourth sentence, for the damage or harm to the physical structure of the body is stated as "repetitious physical traumatic activities." The sentence says and means that an occupational disease exists when "repetitious physical traumatic activities" cause damage or harm to the physical structure of the body. The fifth and final sentence states that ordinary diseases of life to which the general public is exposed outside of the employment are not compensable.

By way of summary, it appears, then, that the statute, as it existed before 1971, and the cases with respect to accidental injuries were left unchanged. The legislature in 1971, however, made substantial changes with respect to occupational diseases, by eliminating the exclusive list of compensable diseases and substituting a general definition of the term. Essentially this case is resolved by our understanding of the fourth sentence. Maksyn contends, and the courts below have held that an occupational disease exists not only when a repetitious physical traumatic activity causes damage or harm to the physical structure of the body; he says that it exists also when a repetitious mental traumatic activity causes the damage. The statute does not support the conclusion.

■ The Sixty-Second Texas Legislature, in its amendment to section 20 of article 8306, made a conscious choice about including or excluding mental causes as well as physical causes. Senate Bill 265, as originally introduced in the legislature, more broadly defined the permissible causes as "repetitious *mental or* physical traumatic activities." [Emphasis added.] Senate Journal, 62nd Leg., Reg.Sess.1971, p. 666.

bones, tissues and organs which function together by means of electrical, chemical and mechanical processes in a living, breathing, functioning individual. To determine what is meant by "physical structure of the body", the structure should be considered that of a living person—not as a static, inanimate thing. 279 S.W.2d at 318.

3. Unless from the context the meaning is clearly to the contrary, such terms shall also be construed to mean and include occupational diseases, as hereinafter defined. Tex.Rev.Civ. Stat.Ann. art. 8306, § 20 (1967).

The House of Representatives deleted the words "mental or," and the Senate concurred in the change. House Journal, 62nd Leg., Reg.Sess.1971, pp. 5494–96; Senate Journal, 62nd Leg., Reg.Sess.1971, p. 5378. The legislature chose to include coverage for physical activities that cause the harm or damage; it excluded coverage for mental activities. The deletion of a provision in a pending bill discloses the legislative intent to reject the proposal. *Grasso v. Cannon Ball Motor Freight Lines*, 125 Tex. 154, 81 S.W.2d 482 (1935). Courts should be slow to put back that which the legislature has rejected. *Love v. Wilcox*, 119 Tex. 256, 28 S.W.2d 515, 524 (1930).

Further evidence that the legislature was aware of the significance of the inclusion or exclusion of the words "mental or" is found in section 5 of Senate Bill 265, which stated: "It is the express intent of the Legislature in enacting this Act that nothing contained in this Act shall ever be deemed or considered to limit or expand recovery in cases of mental trauma accompanied by physical trauma." 2 General and Special Laws, 62nd Leg., Reg.Sess.1971, pp. 2549–50. There is no occasion for an interpretation of the full meaning of section 5, but it demonstrates, at least, that the legislature in dealing with section 20 in 1971, was conscious of the differences between mental and physical stimuli. One instance of mental trauma accompanied by physical trauma is illustrated by *Hood v. Texas Indemnity Ins. Co.*, 146 Tex. 522, 209 S.W.2d 345 (1948). Hood's accidental injury to his foot and elbow had in turn caused Hood to have a disabling neurosis. He recovered for the neurosis. The legislature apparently wanted to make clear that it was not altering that principle, which, however, is not the problem before us in this case. Mr. Maksyn did not suffer an accidental injury, and he does not so contend.

We conclude that mental trauma, as explained in *Olson* and *Bailey*, can produce an accidental injury so long as there is proof of a definite time, place, and cause; there is no precedent that holds, and amended section 20 does not state, that mental trauma can produce a compensable occupational disease. It appears that the Texas Legislature drew its line for compensability for occupational diseases by limiting coverage to those cases in which physical activities cause harm or injury and by denying coverage when mental activities cause the harm or injury. The legislature very well reasoned that physical activities are identifiable and traceable whereas such factors as worry, anxiety, tension, pressure, and overwork are not. In the case of mental activities, there must be the more reliable proof of an ascertainable time, place, and event. *Bailey v. American General Ins. Co.*, 154 Tex. 430, 279 S.W.2d 315 (1955); *Traveler's Ins. Co. v. Garcia*, 417 S.W.2d 630 (Tex.Civ.App. —El Paso 1967, writ ref'd n. r. e.); *Aetna Insurance Co. v. Hart*, 315 S.W.2d 169 (Tex. Civ.App.—Houston 1958, writ ref'd n. r. e.).

The few cases that have arisen in Texas since 1971 under amended section 20 support this conclusion. Repetitious physical traumatic activities that have produced damage or harm have been held compensable in *Employers Commercial Union Ins. Co. v. Schmidt*, 509 S.W.2d 398 (Tex.Civ.App.— Eastland), *writ ref'd n. r. e. per curiam*, 516 S.W.2d 117 (Tex.1974); *Standard Fire Ins. Co. v. Ratcliff*, 537 S.W.2d 355, 357 (Tex. Civ.App.—Waco 1976, no writ); *Charter Oak Fire Ins. Co. v. Hollis*, 511 S.W.2d 583, 584 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n. r. e.).

The line drawn by the Texas Legislature is consistent with that drawn by the majority of jurisdictions of the country. 1A A. Larson, Workmen's Compensation Law, § 42.23 at 7–377 (1973). It is stated in *Ayer v. Industrial Commission*, 531 P.2d 208 (Ariz.App.1975) that "a disabling mental condition brought about by the gradual buildup of emotional stress over a period of time and not by an unexpected injury causing event is not compensable unless accompanied by physical force or exertion." *See also Messex v. Georgia-Pacific Corp.*, 293 So.2d 615 (La.App.1974); *Garmissie v. Pelham Painting Co.*, 12 A.D.2d 839, 209 N.Y.S.2d 578 (1961); *Lawson v. Employer's Ins. of Wausau*, 330 F.Supp. 321 (E.D.Tenn. 1971); *contra, Turner v. Southern Califor-*

*nia Edison Co.*, 42 Cal.App.3d 1036, 117 Cal. Rptr. 358 (1974); *Baker v. Workmen's Compensation Appeals Bd.*, 18 Cal.App.3d 852, 96 Cal.Rptr. 279, 285 (1971); *Beveridge v. Industrial Accident Comm'n*, 175 Cal.App.2d 592, 346 P.2d 545, 547 (1959); *Carter v. General Motors Corp.*, 361 Mich. 577, 106 N.W.2d 105 (1960). The results in the California cases which permit recovery for mentally traumatic activities are reached rather easily in view of their statute which permits recovery for a cumulative injury caused by *mentally* or physically traumatic activities. Cal.Lab.Code § 3208.1 (Deering 1976).

All of the proof in this case upon which Mr. Maksyn relies in support of his claim for compensation for an occupational disease is that mental stimuli produced the disease. For the reasons stated, that proof is legally insufficient.

The judgments of the courts below are reversed, and judgment is rendered that the claimant take nothing.