**LITTON INDUSTRIAL PRODUCTS, INC., et al., Appellants,**

v.

**Ernest GAMMAGE, Appellee.**

No. C2921.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 16, 1982.

A.J. Watkins, Kenneth P. Fountain, Barbara B. MacPhail, Houston, for appellants.

Russell L. Cook, Jr., Young, Cook, Pfeifer & Hampton, Hulen Ford, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MILLER and JUNELL, JJ.

MILLER, Justice.

This appeal arises from a suit brought for severe personal injuries and damages sustained by the appellee, Ernest Gammage, when a ratchet adapter manufactured by one of the appellants, Litton Industrial Products, Inc. (hereinafter cited as Litton), failed while being used by the appellee. The appellee brought suit against Litton and the other appellants, which are associated Litton Companies, on the basis of negligence, strict liability, and for deceptive trade practices under the Deceptive Trade Practices—Consumer Protection Act, Tex. Bus. & Com.Code Ann. §§ 17.41 *et seq.* (hereinafter cited as DTPA), which became effective May 21, 1973. The appellee also sued Exxon Corporation, on whose premises the accident and injuries occurred, for failing to provide a safe place to work. Cross-actions for indemnity and contribution were filed by Litton against Exxon and by Exxon against Litton. Exxon also brought appellee's employer, Waukesha—Pearce Industries, Inc., (hereinafter cited as Waukesha—Pearce) into the case as a third party defendant seeking indemnity on the grounds of a written indemnity agreement between the two. The cross-actions and third-party actions were compromised during trial at the close of appellee's case. Neither Exxon nor Waukesha—Pearce joined in this appeal. Highlands Insurance Company filed a petition in intervention

seeking recoupment of its workmen's compensation outlay made to and for the benefit of the appellee.

The case was tried to a jury; the court entered judgment on the verdict in favor of the appellee and against the appellants for the sum of $705,852.00 actual damages. These actual damages were trebled by the trial court, pursuant to the DTPA, for a total judgment of $2,117,556.00. Although the appellants argue that personal injuries are not recoverable under the DTPA, the appellants never challenged the actual damages in the amount of $705,852.00 sustained by the appellee, and actually moved for judgment on the jury's verdict based on the damages found, but excluding the trebling under the DTPA. Appellants base their appeal on fifteen alleged points of error. We find no error in the judgment below, and therefore overrule all points of error alleged and affirm the judgment of the trial court.

Litton was and is the manufacturer of a device known as the Blackhawk Ratchet Adapter, ¾ inch drive. This device, when placed between a socket and a handle, permits use of these tools within relatively narrow confines, permitting the user a short stroke-ratcheting effect. The appellee, while an employee of Waukesha—Pearce as a diesel mechanic, was using the ratchet on the premises of Exxon at Village Mills, Texas, removing and replacing the heads on a twelve-cylinder gas engine. While appellee had the device under load and was pulling it back toward him, the ratchet failed and caused him to fall backward, producing severe personal injuries.

The ratchet adapter had been purchased new by appellee's employer; it was kept by the appellee in his toolbox and truck. The pawl of the ratchet, one of the parts which permits the adapter to ratchet and, depending upon the election of the user, to drive in either direction, was found to have a chipped first tooth by one of the witnesses. The adapter had an apparent defect, admit appellants, at least in the sense that the tooth of the pawl was not as intended or as manufactured, the tooth having broken or chipped off on its crown.

■ Appellants' First, Second, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth and Thirteenth points of error relate to actions in the trial court which supposedly affected the jury's verdict. As aptly pointed out by the appellee, these points are utterly without merit. Based on the authorities cited and referred to us by the appellee, it is the appellee's contention that we are not faced with these issues on appeal since appellants have waived any complaints as to the jury's findings and the court's rulings by moving for judgment on the jury's verdict. Such action vouched for the jury's findings and the court's rulings. In viewing the entire record and the motion for Entry of Judgment, appellee's contention has merit and is supported by case law. Appellants filed in this cause the following motion for Entry of Judgment:

### MOTION FOR ENTRY OF JUDGMENT OR ALTERNATIVE JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, NEW BRITAIN MACHINE COMPANY, NEW BRITAIN MACHINE DIVISION OF LITTON INDUSTRIAL PRODUCTS, INC., LITTON INDUSTRIES, INC., LITTON INDUSTRIAL PRODUCTS, INC., and BLACKHAWK HAND TOOLS, some of the defendants in the above styled and numbered cause, and move that the proposed judgment attached hereto as Exhibit A or, in the alternative, the proposed judgment attached hereto as Exhibit B be entered in accordance with the jury's verdict.

WHEREFORE, premises considered, these defendants pray that this motion for entry of judgment or alternative judgment be granted and that the proposed judgment attached hereto as Exhibit A be entered or, in the alternative, that the proposed judgment attached hereto as Exhibit B be entered, and for such other and further relief as this Honorable Court deems just and equitable.

Respectfully submitted,

LAW OFFICES OF A.J. WATKINS

/s/ A.J. Watkins

By: A.J. Watkins
State Bar Card No. 20921000
Attorney for Defendants, New Britain Machine Company, New Britain Machine Division of Litton Industrial Products, Inc., Litton Industries, Inc., Litton Industrial Products, Inc., and Blackhawk Hand Tools
3500 Travis
Houston, Texas 77002
(713) 522–1780

Appellants' Motion for Entry of Judgment was an affirmation that the jury's findings and the court's rulings were supported by evidence; therefore, appellants cannot now complain on appeal concerning these issues. Over one half century of case law in this state establishes quite clearly the proposition that a party who moves for entry of judgment based on the jury's verdict is bound by that verdict and cannot complain on appeal of that verdict. Our Commission of Appeals, in *Whitehead v. Reiger,* 6 S.W.2d 745 (Tex.Comm.App.—1928, judgment adopted), citing a 1925 Court of Civil Appeals case, stated the rule:

> Plaintiffs in error did not challenge the sufficiency of the evidence to support any of the findings of the jury. On the other hand, they filed a motion for a verdict based upon the findings, which was an affirmation that such findings were supported by the evidence. *Fire Association of Philadelphia v. Moss,* 272 S.W. 555 (Tex.Civ.App.—Waco 1925, no writ).

In *Heard v. Houston General Ins. Co.,* 553 S.W.2d 830 (Tex.Civ.App.—Waco 1977, no writ), the court stated that:

> [D]efendant moved for judgment on the verdict; and motion for judgment on the verdict is an affirmation that the findings of the jury are supported by the evidence. *Id.* at 832. *See also Wilson v. Burleson,* 358 S.W.2d 751 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.).

Our Supreme Court, in *Miner-Dederick Construction Corporation v. Mid-County Rental Service, Inc.,* 603 S.W.2d 193 (Tex. 1980), recently noted that the rationale of the cases citing the rule was that a party should not be able to take inconsistent positions. The rule was found to be inapplicable in *Miner* because Petitioner's Motion for Judgment on the verdict was not inconsistent with the position it took on appeal. In *Miner* it was contended that the trial court misinterpreted the meaning of the jury's answers, or, alternatively, that there was insufficient evidence to support an adverse interpretation of the verdict. In the instant case, appellants' position on appeal is completely inconsistent with the position it took in the trial court. Appellants made no objection at any point in time as to the sufficiency of the evidence to support the jury's verdict. In fact, appellants attempted to use these findings to enter a judgment in this case. As the record reflects, the appellants have never disputed the appellee's damages, nor did appellants ever dispute any actions of the jury until after the trial court trebled the damages pursuant to the DTPA. Oddly, appellants have now on appeal switched positions and have attacked the findings of the jury. Well-established law in Texas prohibits appellants from doing this.

Furthermore, the Texas Supreme Court has conclusively held that appellants have waived their alleged points of error that were not presented to the trial court for its ruling. In *Greater Fort Worth and Tarrant County Community Action Agency v. Mims,* 627 S.W.2d 149 (Tex.1982), our Supreme Court recently held that Rule 324 requires that all matters raised on appeal must first be raised in some manner in the Trial Court. In *Mims,* petitioner raised for the first time in the Court of Appeals the question of plaintiff's standing to sue. The Supreme Court stated that:

> A point not raised by pleadings, on motion for new trial, or otherwise presented to the trial court may not be raised on appeal. Rule 324, Tex.R.Civ.Pro. This issue was not raised by the pleadings; it was not mentioned in CAA's motion for new trial or its amended motion for new trial, and there is nothing in the record to

indicate that it was ever brought to the attention of the trial court; therefore the point was waived by CAA. *Id.* at 151. Therefore, appellants' First, Second, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth and Thirteenth Points of Error are overruled.

■ Similarly, appellants complain in their Third and Fourth Points of Error that there is no evidence, or there is insufficient evidence, of actions by appellants, committed after May 21, 1973, which would make them liable under the DTPA after that effective date. Section 17.63 of the DTPA provides:

The provisions of this subchapter apply only to acts or practices occurring after the effective date of this subchapter . . . .

Along with the previously grouped points of error these two points of error are being mentioned for the first time on appeal. As therein discussed appellants have waived any alleged error with regard to no evidence or insufficient evidence by failing to raise the issue below and by moving for judgment on the verdict. At any rate, the evidence regarding the sale of the ratchet adapter is largely circumstantial. Such evidence is a perfectly acceptable means of proving a fact, especially in instances where no direct evidence is available. *Darryl v. Ford Motor Company,* 440 S.W.2d 630 (Tex. 1969). We therefore overrule appellants Third and Fourth Points of Error.

■ We now turn to the heart of the appellants' appeal. In their Fourteenth and Fifteenth Points of Error, appellants contend that the DTPA does not apply to personal injury damages, and that the Trial Court therefore erred in trebling the damages. The applicable law does not support this contention, because actual damages recoverable under the DTPA include damages for personal injury, and recent case law in this State reiterates the applicability of the DTPA to personal injury actions. The 1973 DTPA clearly requires trebling of damages for the breach of an implied warranty, and states in pertinent parts that:

Sec. 17.50 Relief for Consumers

(a) A consumer may maintain an action if he has been adversely affected by any of the following . . .

(2) a failure by any person to comply with an express or implied warranty;

. . .

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended; . . . .

The statute does not exclude trebling for actual damages for personal injuries. It is clear that it applies to all actual damages. The 1973 DTPA further provides:

Sec. 17.44 This chapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

In the case of *Providence Hospital v. Truly,* 611 S.W.2d 127 (Tex.Civ.App.—Waco 1980, writ dism'd w.o.j.), the court applied the DTPA to a personal injury action and affirmed the trial court judgment trebling the damages for personal injuries sustained by the plaintiff. The Texas Supreme Court, in *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977), recognized that the element of mental anguish must be trebled under the DTPA. Obviously, there is no justifiable reason to treble mental anguish in a non-personal injury case and not treble it in a personal injury case. Again, in *Garcia v. Texas Instruments,* 610 S.W.2d 456 (Tex. 1980), the Supreme Court recognized that personal injury cases may be brought under the DTPA. *Garcia* involved a personal injury claim for breach of the implied warranty of merchantability. The Supreme Court noted that the DTPA was not before them, but made the following enlightening statement in a footnote:

4. It should be noted that in order for an injured party to recover treble actual damages in excess of $1,000.00 in a breach of warranty action under the De-

ceptive Trade Practices Consumer Protection Act, it is necessary that the trier of fact find that the party breaching the warranty did so 'knowingly'. § 17.-50(b)(1) (Supp.1979). *Id.* at 458.

Therefore, the Supreme Court recognized that personal injury breach of warranty suits could be trebled, but noted that under the 1979 Act the trier of fact must find that the party breaching the warranty did so knowingly. We also note that the Supreme Court in *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931 (Tex.1980) held that the plaintiff could not recover damages for mental anguish under the DTPA where those damages were not otherwise recoverable at common law, but mental anguish is clearly recoverable where personal injury exists. Therefore, the Supreme Court has impliedly recognized that a personal injury action under the DTPA is appropriate and within the bounds of the statute.

Just recently, the Court of Appeals for the First Supreme Judicial District, in *Mahan Volkswagen, Inc., et al v. Hilda Hall, et al.,* No. 01–81–0658–CV (Tex.App.—Houston [1st Dist.] August 31, 1982) (not yet reported), considered and decided the exact point raised in this case. *Mahan* involved an automobile accident in which Mrs. Head, the daughter of Hilda Hall, was killed. The plaintiffs alleged that Mrs. Head's car was defective because of a defective brake system. On the basis of the jury's verdict, the court awarded $404,910.00 as actual damages and additional damages of $809,820.00 against the seller of the vehicle pursuant to the DTPA. The jury found in answer to special issues that the defendant Astro had failed to disclose to the decedent the fact that the car's brakes were defective and that such failure was a deceptive act or trade or practice. The First Court of Appeals, in facing the very issue now before this court as to whether or not the DTPA is applicable to personal injury actions stated:

The plaintiffs' cause of action in this case arose on June 26, 1975, and their claim is, therefore, governed by the provisions of the Deceptive Trade Practices Act as enacted in 1973 by the 64th Legislature. See. *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977). Since its enactment in 1973, the Act has been amended in every legislative session, and the legislative history of this Act indicates that during the 1979 session of the legislature, several efforts were made to redefine the term 'actual damages' so as to eliminate personal injury cases from its scope. The legislature rejected these proposed amendments, and we are bound to consider such action as reflecting the legislature's satisfaction with the broader applicability of the term. *Smith v. Baldwin,* 611 S.W.2d 611 (Tex.1981). No matter what views of policy this court might have regarding whether a statute should or should not be given a particular application, it is not authorized to place restrictions on a statute which the legislature has previously considered and rejected. *Transportation Ins. Co. v. Maksyn,* 580 S.W.2d 334 (Tex.1979).

The First Court of Appeals then went on to say:

We have not been referred to an opinion issued by a Texas appellate court which squarely addresses this question, but we note several cases which support the view that the Act is applicable to personal injury actions.

Although we are not bound by the decisions of the First Court of Appeals, we are of the opinion that the law was properly applied in *Mahan,* and furthermore, in the interest of stare decisis, we believe that the law of this State expects uniformity among the Courts of Appeals when a case logically and rationally follows the case law and legislative law upon proper analysis and applicable extrapolation. The court in *Mahan* also referred to the cases of *Truly, id.,* and *Brown, id.,* as cases supporting the award of treble damages under the DTPA in a personal injury case. The *Mahan* case directly supports the proposition argued by the appellee in the case at bar. Chief Justice Evans further stated in *Mahan* that:

In *Providence Hospital v. Truly,* 611 S.W.2d 127 (Tex.Civ.App.—Waco 1981, writ dism'd) treble damages were awarded for personal injuries, although it does

not appear that the question of the applicability of the statute was considered on appeal.

In *Brown v. American Transfer & Storage Co., supra,* a recovery for emotional distress under the Deceptive Trade Practices Act was disallowed, but the court's opinion indicates that personal injury damages accompanying physical injury might be allowed under the proper circumstances.

Section 17.50 of the Act provides that each consumer prevailing under the Act is entitled to have the actual damages trebled, plus court costs and reasonable attorney's fees. Since the Texas Supreme Court has held that 'actual damages' under this section means all damages recoverable at common law, *Brown v. American Transfer & Storage, supra,* the trial court did not err in awarding the amount of actual damages trebled . . . .

In the recent case of *Tom Benson Chevrolet, Inc. v. Alvarado,* 636 S.W.2d 815 (Tex. Civ.App.—San Antonio 1982, writ filed), the court trebled the jury's award of $75.00 in medical expenses, $3,000.00 for physical pain and mental anguish, and some further sums awarded for property damage. This trebling was based on both DTPA and the breach of an implied warranty of merchantability. Therefore, this case also stands for the proposition that personal injury damages are recoverable under the DTPA. The Court in *Alvarado* noted that while anger, frustration, and aggravation standing alone generally would not support an award for damages for mental anguish under *Brown, id.,* mental anguish coupled with physical injury, in *Alvarado* a back strain, would be compensable.

The appellants have devoted considerable time to legislative intent in the three briefs that they have filed with this Court, and vehemently argue that the Texas Legislature did not intend to extend to personal injury victims the protection afforded by the DTPA. It is a fundamental principle of statutory construction that the courts only look behind the law as to legislative intent and public policy where the statute is un-

clear, uncertain or ambiguous. *Col-Tex Refining Co. v. Railroad Commission of Texas,* 150 Tex. 340, 240 S.W.2d 747 (1951). If there is no ambiguity, the statute itself is the public policy. We are of the opinion that the DTPA is clear and unambiguous and, therefore, it is not necessary to consider legislative intent beyond that expressly stated in the statute itself. The fundamental principle of statutory construction that the courts consider legislative intent only where the language of the statute is unclear was discussed by Justice Norvell, in *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99 (1961), wherein he opined:

This brings to mind the maxim that 'If parliament does not mean what it says, it must say so'. *Id.* 354 S.W.2d at 109.

He went on to say:

[O]perating as we are under strict theoretical division of governmental powers, it would take a bit of doing on the part of the judiciary to say, in the absence of ambiguous and uncertain statement or patent and manifest absurdity, that the legislature intended something different from the clear import of the words chosen by it. . . . *Id.* 354 S.W.2d at 109, n. 3.

Appellants' arguments concerning legislative intent and public policy which go beyond the statute are irrelevant and without merit. As indicated above, the case law in this State strongly supports the view that treble damages are recoverable in a personal injury action.

The DTPA clearly states that all actual damages are to be trebled, regardless of whether they are personal injury or property damages. Upon our review of the applicable legislative history, we found that the purpose of the DTPA was to deter that behavior expressly prohibited by the DTPA. It would be totally illogical to conclude that the prohibited practices are better deterred by trebling property damage awards than by trebling personal injury awards. We can only, in all reasonableness, conclude that it is in keeping with the deterrent function of the DTPA to treble personal injury damages when the proper circum-

stances warrant it. After carefully reading the voluminous record before us in this case we are left with no alternative but to conclude that the trial court properly applied the DTPA to this cause of action, and in doing so was proper under the DTPA's clear and unambiguous language and is further supported by the legislative intent as revealed in the legislative history.

Furthermore, we have found some federal cases, none of which were cited by either the appellants or appellee, which are applicable on the point of statutory construction and the implication doctrine. The implication doctrine is not a recent development in the law, and was created to prevent the frustration of congressional goals. It originated in England in 1854 and was first employed by the United States Supreme Court in 1916 in *Texas & Pacific Railway v. Rigsby,* 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). *See Coach v. Steel,* 118 Eng. Rep. 1193 (Q.B.1854). Rigsby, a railroad employee, was injured as a result of his employer's failure to comply with the regulatory provisions of the Federal Safety Appliance Act, Ch. 196, 27 Stat. 531 (1893), as amended, 45 U.S.C. §§ 1–16 (1970). Although the Act only provided penal sanctions, the court implied a private cause of action for the injured employee, reasoning that:

> A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied.... *See also Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

Since *Rigsby,* federal courts have implied private actions from the Constitution and numerous federal regulatory statutes in an effort to protect interests for which Congress or the Constitution intended protection while failing to provide adequate remedies. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Allen v. State Bd. Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). When Congress enacts a regulatory statute to protect a class of persons, it intends to create an enforcement scheme that will fully protect that class. *See, e.g., Wyandotte Transp. Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). Therefore, when the enforcement scheme fails to adequately protect the intended beneficiaries, it is the duty of the courts to imply a cause of action to effectuate the Congressional purposes. There is a proper justification for the use of the implication doctrine; it is used to fill in the gaps that inevitably exist in Congressional enforcement schemes, and enables courts to effectuate the goals Congress intended to achieve.

Additionally, courts must utilize the rule of statutory construction to infer legislative intent. One rule of construction used in earlier cases and recently revived by the United States Supreme Court in *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974), is the maxim *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another). This maxim holds that whenever Congress provides a specific remedy in one section of a statute, the omission of other remedies implies a legislative intent that the specified remedy be exclusive. There are many factors that must be considered in determining whether the enforcement scheme created by Congress is inadequate. Courts must examine the availability and adequacy of existing civil and criminal sanctions, administrative procedures, and state remedies. The Court must not only view the statutory scheme as enacted, but also its practical effectiveness.

Since we are of the opinion that the DTPA statute is clear and unambiguous, we are not obligated to look at legislative history in search of legislative intent. Even if we were inclined to entertain the Legislature's intent behind the passage of the DTPA, we would under the implication doctrine conclude that "the right to recover the damages from the party in default is implied." *Rigsby, id.* As pointed out in appellant's reply brief, quoting from legislative history, "... no reputable, respectable, honest businessman has anything to fear by

the passage of this law [the DTPA]." The appellants had their day in Court; in fact, the record before us shows that the trial in this cause was lengthy and well fought. The jury returned its verdict and the trial judge properly applied the law by trebling the actual damages under the DTPA.

Accordingly, all Points of Error are overruled and the judgment of the trial court is affirmed.