### NORTH RIVER INSURANCE COMPANY OF NEW JERSEY, Appellant,

v.

### Sara Elizabeth GRAY, et al., Appellees.

### No. 3–87–241–CV.

Court of Appeals of Texas, Austin.

Feb. 1, 1989.

Rehearing Denied March 15, 1989.

William J. Eggleston, Taylor, Eggleston, Godwin & McDonald, Houston, Robert D. Stokes, Flahive, Odgen & Latson, Austin, for appellant.

Thomas Black, Martin & Drought, Inc., San Antonio, for appellees.

Before SHANNON, C.J., and CARROLL and JONES, JJ.

SHANNON, Chief Justice.

The pivotal question in this appeal is whether the deceased, who had a heart attack on the job, suffered a compensable accidental injury under the workers compensation law. Tex.Rev.Civ.Stat.Ann. art. 8306 *et seq.* (Supp.1989).

Appellant North River Insurance Company seeks to set aside the judgment of the district court of Bastrop County awarding workers compensation death benefits to appellees Sara Elizabeth Gray and others. Jerry Don Gray died on March 6, 1985, of ventricular fibrillation (heart attack) in his office at the airport in Newark, New Jersey. The jury found that Gray (1) received an injury on that date, (2) in the course of his employment with Continental Airlines, and (3) that such injury was the producing cause of his death. Based upon the jury's answers, the district court rendered judgment for appellees. This Court will reverse the judgment.

Gray's job with Continental was not one performing manual labor. His job title was a "field maintenance supervisor." In the Continental operation, as we understand, a field maintenance supervisor is stationed at an airport and has the responsibility to insure that aircraft are properly serviced and depart on schedule. Depending upon the volume of flights, the field maintenance supervisor will have a varying number of mechanics under his direction.

In late February 1985, Continental sent Gray to Newark to reopen Continental's facility there. To get the Newark facility "up and running," Continental expected Gray to build up a stockroom of airplane parts; to interview and hire mechanics; to spend some time with the midnight to seven a.m. mechanics' crew; to establish business relations with other air carriers; and to investigate the possibilities of contracting Continental's maintenance services to other air carriers. The Newark assignment required Gray to devote as many as sixteen or seventeen hours each day to the job. At first, Continental did not supply personnel assistance to Gray in the Newark assignment because the period was one of financial strain and close economy for the airline. On March 5 the airline did send an assistant parts man to help Gray.

On March 5, the evening before his death, Gray worked until nearly midnight and returned to work a little before six a.m., March 6. After lunch Gray collapsed and died while operating a microfiche machine. Operation of a microfiche machine is not physically taxing; it does, however, command the operator's total concentration and attention. In that context, Gray's former supervisor testified that at times the operation of the microfiche machine is capable of driving one "cross-eyed."

There was some proof that on the day before and the morning of his death, Gray helped the assistant parts man move some parts about the parts room. Those parts varied in weight from a handful of nuts and bolts to parts weighing perhaps from twenty to thirty pounds.

The insurance company asserts that there is no evidence to support the jury's answer that the worker received an "accidental injury" as contemplated by the workers compensation law. The insurance company characterizes the proof as showing mental strain alone, unaccompanied by physical strain or overexertion. In considering a no evidence point of error, the reviewing court must reject all evidence contrary to the jury's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis*, 235 S.W.2d 609, 613 (Tex.1950).

For there to be an accidental injury, or an industrial accident, there must be "an undesigned, untoward event traceable to a definite time, place, and cause." *Olson v. Hartford Accident and Indemnity Company*, 477 S.W.2d 859 (Tex.1972); *Solomon v. Massachusetts Bonding & Insurance Company*, 347 S.W.2d 17, 19 (Tex.Civ.App. 1961, writ ref'd). An important observation by the Supreme Court in *Olson* is that those opinions allowing recovery for heart attacks, strokes, and traumatic neuroses have involved particular events. *Olson*, 477 S.W.2d at 860. In 1979, the Supreme Court reaffirmed the definition of an injury. *Transportation Ins. Co. v. Maksyn*, 580 S.W.2d 334, 336 (Tex.1979) (whether "anxiety depression" qualified as a compensable occupational disease).

In *Transport Insurance Company v. McCully*, 481 S.W.2d 948 (Tex.Civ.App. 1972, writ ref'd n.r.e.), this Court concluded that the worker's mental stress *and* physical strain over a two-hour period constituted an accidental injury traceable to a definite time, place, and cause. In *McCully*, the worker suffered a heart attack while working as a "customer service agent" for Braniff. The duties of a customer service agent were being in control of: (1) the forms desk, (2) air freight, and (3) communications and the ramp. The forms desk agent kept abreast of all weather news which he conveyed to the flight crews, and he calculated the weight load of each plane before take-off. One in charge of air freight handled customer requests for service and information which might come in person or by telephone. He was also in charge of all freight for a particular flight and computed the tariff for each shipment. The duties of one in charge of communications and the ramp consisted of sending and receiving all information pertaining to flights, and of keeping a log of this information. Also, upon the arrival or departure of a plane, he must be at the ramp to supervise and assist the unloading or loading.

Although each customer service agent served in each of these capacities on a revolving basis, each helped his fellow agents during rush periods. As a consequence, no matter what his duty on a particular day, an agent would most probably perform some tasks in each of the several capacities.

On the day that McCully suffered the heart attack, he came to work at 2:45. Although he was at the forms desk, he did a number of the other jobs since it was "an unusually heavy day." Among those extra chores was the loading of thirty or forty bags of luggage occasioned by the jamming of the conveyor belt. After loading this baggage, McCully returned to his desk and began writing out two domestic air freight shipments by hand as no typewriter was available. At the same time, McCully was talking to a man on the telephone about shipping a dog to Germany. During the same period there were seven or eight persons trying to make freight shipments, and there were two men from the incoming flight who were at McCully's desk demanding that he locate their lost baggage. At the ticket counter, lines of customers stretched to the opposite wall.

All of these events happened within two hours. About four fifteen or four forty-five McCully experienced a pain in his left shoulder and arm of such severity that he

stopped what he was doing. Although McCully felt only "a little better" after the initial pain, he did load another cart of bags, pulled it outside, and pushed an empty cart in. After his half-hour dinner break, McCully returned to work hoping that he could make it and not wanting to leave his fellow agents with the heavy load. He left the job about fifteen minutes early, went home to bed, and was hospitalized for his heart condition the next morning.

In *McCully* this Court concluded that the worker's two-hour period of physical strain and mental stress, taken together, was sufficient to establish a compensable injury. The Court observed further that *Olson* does not require the worker to prove which specific task during the two hours precipitated the heart attack.

Viewed most favorably to the jury's verdict, *Renfro Drug Co. v. Lewis, supra,* the proof in the instant appeal was that for at least a week Gray had worked long hours with minimal rest in carrying out his single-handed assignment to re-open the Newark office. It may be fairly inferred that during that period of time Gray experienced considerable mental strain in attempting to accomplish his employer's goal. In addition, there was some proof, although not very clear, that he had helped move some parts around the office on the day before and the morning of his death. This proof fails to trace Gray's heart attack to any particular event. *Olson.* Although Gray was plainly under significant mental stress, the facts in this appeal do not demonstrate that, as in *McCully,* the necessary physical strain accompanied that stress within a compressed span of time. This Court concludes that appellees have failed to establish the accidental injury requirement.

The judgment is reversed; judgment is here rendered that appellees take nothing.