Margaret DUNCAN, Appellant,

v.

**EMPLOYERS CASUALTY COMPANY, Appellee.**

No. 08–91–00125–CV.

Court of Appeals of Texas, El Paso.

Jan. 15, 1992.

Abner Burnett, Warren Burnett, Inc., Odessa, for appellant.

Bruce Bangert, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Odessa, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In a workers' compensation suit involving complaints of stress and mental trauma resulting from being reprimanded and transferred to another position by the employee's supervisor, the trial court granted a take-nothing summary judgment on defendant insurance carrier's motion. We affirm.

In a single point of error, the Appellant asserts that the trial court erred in holding that there was no genuine issue as to any material fact, thus entitling the defendant to a summary judgment. Appellee contends that its summary judgment proof negates two essential elements of Appellant's cause of action: first, that she sustained an accidental injury, and second, that the injury, if any, occurred while in the course and scope of her employment.

In reviewing a summary judgment appeal, we are required to determine whether the successful movant in the trial court carried its burden of showing that there is no genuine issue of a material fact issue and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon*, 690 S.W.2d at 548–49. If the defendant is the movant and he submits summary judgment evidence dis-

proving at least one element of the plaintiff's case, then summary judgment should be granted. *Bradley v. Quality Service Tank Lines,* 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation,* 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ). If the summary judgment does not state the specific ground on which it was granted, it may be upheld on any theory presented in the motion for summary judgment. *Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

Margaret Duncan (Duncan), Appellant, was employed by Delhi Gas Pipeline (Delhi) in Pecos for approximately seven and one-half years prior to her voluntary resignation on January 3, 1989. In April 1988, Duncan had a disagreement with her supervisor, Alex Bucher (Bucher) concerning the hiring of an applicant for a vacant position at a salary higher than Duncan was receiving. Duncan told Bucher that she was going to write a letter to Bucher's superior in Houston recommending against the employment of the applicant. Eventually she did write such a letter in June 1988. Bucher became upset with Duncan either when she first threatened to write the letter or when he found out that she had written the letter. In either event, he stopped speaking to her, avoided her and held up her work "to make me look bad."

She was worried about going over Bucher's head. Matters between them came to a head on July 29, 1988 when Bucher called Duncan into his office and presented her with a letter of reprimand. It contained five complaints against Duncan which she believed were untrue and she refused to sign it. At the conclusion of the meeting, Bucher told Duncan she was being moved to the front of the office as a receptionist at the same salary. In their conversation, Bucher's voice "was a little loud," but he used no bad language and said to her, "[t]his is the way it's going to be." It wasn't the move that bothered her, it was the way Bucher handled the reprimand and treated her.

In her new position where she worked for five men, there was a daily air of hostility due to the fact that Bucher and most of the other secretaries would walk by without speaking to her. By the middle of August, Duncan had first decided to resign because of sleeplessness, nervousness, nausea, depression, tension headaches and high blood pressure. The doctor put her on tranquilizers and sleeping pills. She again decided to resign in December 1988 and submitted her letter of resignation. The five men she worked for were instructed by Bucher not to give her letters of recommendation. Duncan claimed that Bucher never acknowledged receiving her letter, but he did conduct her "final interview." He indicated on her form that she was "rehireable."

After she quit work, Duncan continued to have headaches, depression, loss of self-confidence and loss of interest in her housework and church. In her response to the insurance carrier's motion for summary judgment, Duncan attached a psychiatrist's report stating his opinion that she was suffering from a post-traumatic stress disorder caused by the traumatic events of July 29, 1988.

## IS THERE A GENUINE ISSUE OF FACT AS TO WHETHER DUNCAN SUSTAINED A COMPENSABLE INJURY?

Although Duncan asserts that her injury can be traced to the reprimand that she received on July 29, 1988, which she contends is definite as to time, place and cause, there are two questions raised by that claim. First, was Duncan's injury sustained in the course of her employment, and second, was the injury traceable to a definite time, place and cause?

The term "injury" is to be "construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." Tex.Rev.Civ.Stat.Ann. art. 8306, § 20 (Vernon 1967). The phrase "physical structure of the body" relates to the entire body, not just to the skeletal structure. *Bailey v. American General Insurance Company,* 154 Tex. 430, 279 S.W.2d 315, 318 (1955) (the claimant suffered a severe neurosis as a result of seeing his co-worker fall to his death from the

same scaffold on which claimant was located). In order to be compensable, the injury in question must have occurred within the course of the claimant's employment. As defined by the Texas Workers' Compensation Act, the phrase "injury sustained in the course of employment" has two elements: first, the injury must be of the kind and character having to do with and originating in the employer's work or business, and second, the injury must be sustained by the employee while he was engaged in the furtherance of that work or business. *Deatherage v. International Insurance Company,* 615 S.W.2d 181, 182 (Tex.1981); *Biggs v. United States Fire Insurance Company,* 611 S.W.2d 624 (Tex.1981); *Texas Employers Insurance Association v. Page,* 553 S.W.2d 98 (Tex.1977); *City of Garland v. Vasquez,* 734 S.W.2d 92, 95 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); Tex.Rev.Civ.Stat.Ann. art. 8309, § 1 (Vernon 1967). Moreover, the injury viewed from the claimant's standpoint must have been an "accidental injury" in the sense that it was an "untoward event traceable to a definite time, place, and cause." *Olson v. Hartford Accident and Indemnity Company,* 477 S.W.2d 859 (Tex.1972). Mental trauma is not by itself compensable unless it is traceable to a definite time, place and cause and produces an accidental injury. *Transportation Insurance Company v. Maksyn,* 580 S.W.2d 334, 337 (Tex. 1979) (a case answering the question in the negative "whether damage or harm caused by a repetitious mental traumatic activity, as distinguished from a physical activity, can constitute an occupational disease." *Id.* at 335). In *Maksyn,* Justice Pope made it clear that the Supreme Court in *Bailey* required an accidental injury in the sense of an "ascertainable single event, though caused by mental stimuli." *Id.* at 337.

█ Duncan contends that she suffered an accidental injury in the course of her employment as a result of the reprimand and demotion, citing as controlling authority *Director, State Employees Workers' Compensation Division v. Camarata,* 768 S.W.2d 427 (Tex.App.—El Paso 1989, no writ). In *Camarata,* this Court extended the concept of physical injury to its outer limit by holding that there was evidence to support a favorable jury finding that a false and derogatory memo concerning the employee's job proficiencies, circulated by the employee's supervisor, caused a mental trauma which in turn produced a physical injury that occurred in the course of his employment. Quoting from *Maksyn,* 580 S.W.2d at 338, this Court agreed that "mental trauma, *as explained in Olson and Bailey,* [underlined phrase omitted in *Camarata* ] can produce an accidental injury so long as there is proof of a definite time, place, and cause." 768 S.W.2d at 429. In *Olson,* the Supreme Court held that a heart attack on the job following a series of several irritating and frustrating employment experiences, but unaccompanied by physical strain, was not compensable. And in *Bailey,* there was a physical injury involved, albeit to another worker who fell from a scaffold to his death, which precipitated the mental trauma. In *Camarata,* there was some medical testimony connecting the employee's post-traumatic stress disorder to a definite date, place and cause, namely the showing of the memo at work on September 30, 1985. The common threads in *Bailey* and *Camarata* are the happening of "an undesigned, untoward event that is traceable to a definite time, place, and cause," (*Maksyn,* 580 S.W.2d at 336), and an injury that occurred in the course of the claimant's employment. In the instant case, as distinguished from *Camarata,* the report of the doctor (who incidentally is the same psychiatrist who in *Camarata* gave a favorable opinion on causation) expressed no opinion on causal connection but only stated: "[Duncan] was in her usual state of good health until July 29, 1988 when, she alleges, she was devastated to learn from the new district manager that she was to be demoted to receptionist from her position as Chief District Secretary, and was to be replaced by a younger woman who could type only 18 words a minute."

In her deposition, Duncan said that it wasn't the transfer itself that bothered her, it was the manner in which the transfer was done. Being reprimanded, deserved or

undeserved, for one's job performance may well be, from both the employer's and the employee's standpoint, a natural part of any job causing mental stress but the resulting injury, if any, is not suffered while the employee is engaged in or about furtherance of the affairs of the employer. *City of Austin v. Johnson,* 525 S.W.2d 220, 221 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.). In a more recent case in which this Court declined to extend the *Camarata* holding to mental trauma resulting from the employee's choice between demotion or retirement, we said: "Disappointment in job expectations, worry and anxiety over job loss, failure to be promoted, and the like have long fallen outside the ambit of 'injury sustained in the course of employment' simply because such emotional or mental states are not connected with the employer's business. [Citations omitted]" *Marsh v. The Travelers Indemnity Company of Rhode Island,* 788 S.W.2d 720, 721 (Tex.App.—El Paso 1990, writ denied). For the same reasons, we hold that an employee's mental distress or trauma and any injury resulting therefrom caused by a reprimand is not an injury connected with the furtherance of the employer's business.

Having held that the mental trauma and injury suffered by Duncan as a result of the reprimand was not an injury sustained in the course of employment, it is unnecessary for us to consider whether the trauma and injury were traceable to a definite time, place and cause. The point of error is overruled.

Judgment is affirmed.