**Bobbie Jean CHAVIS, Appellant,**

v.

**DIRECTOR, STATE WORKER'S COMPENSATION DIVISION,**
**State of Texas, Appellee.**

No. 09–95–162CV.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 25, 1996.

Decided June 13, 1996.

Rehearing Overruled June 27, 1996.

Joyce Keating, Jessica L. Su, Coane & Associates, Houston, for appellant.

Dan Morales, Attorney General, Austin, John Giberson, Assistant Attorney General, Austin, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

This is an appeal of the trial court's judgment in a claim for worker's compensation benefits arising under the Texas Workers' Compensation Act as it existed prior to January 1, 1991. Following an award of worker's compensation benefits to appellant, appellee filed suit to set aside the award. Appellant then counterclaimed and challenged the amount of the award. Following a jury trial, the jury returned a verdict for the appellee and the trial court entered judgment accordingly. Appellant then timely perfected her appeal and asserts four points of error.

### Facts

From 1985 to 1989, appellant Bobbie Jean Chavis worked for the Texas Department of Human Services (TDHS) as a PBX operator. Up until June 15, 1988, appellant was supervised by Sherron Abbott, the office manager. Ms. Abbott supervised the switchboard operator, mailroom, and the print shop. After Ms. Abbott ceased employment with TDHS, Ms. Margie Pass took over the position vacated by Ms. Abbott. Appellant contends that Ms. Pass increased appellant's workload and started to harass appellant. Appellant alleges that due to her relationship with Ms. Pass, she developed stress and "angina". Appellant sought medical treatment for her

health problems. In an attempt to establish a definite time, place, and cause, appellant alleges she sustained an accidental injury on or about April 7, 1989, when, in the scope and course of her employment after lifting heavy boxes in the mail room she began to experience excruciating chest pains. Prior to the time Ms. Pass became her supervisor, appellant states she was in fair health and had never experienced any of the symptoms she subsequently suffered; i.e., dizziness, blurred vision, and excruciating chest pains.

After the April 7, 1989, episode, appellant filed a claim for worker's compensation with the Industrial Accident Board and the Texas Worker's Compensation Commission found that appellant sustained an injury or occupational disease on April 7, 1989, in the course of her employment and awarded her benefits. Following this award, the Worker's Compensation Division filed suit to set aside the award. Appellant answered and filed a cross action against the State for full worker's compensation, lump sum distribution, medical expenses, disability and incapacity, breach of good faith and fair dealing, and damages. The parties were subsequently realigned with appellant as plaintiff and the State as defendant. A jury trial was held beginning on January 9, 1995. The jury returned a verdict in favor of appellee. Appellant brings forth four points of error which are overruled, and the judgment of the trial court is thus affirmed.

Appellant's first point of error urges "[t]he trial court erred in denying Chavis' motion for a new trial because there is no evidence, or the verdict is against the great weight and preponderance of the evidence."

■ This is a worker's compensation case in which the plaintiff/appellant had the burden of proof by the preponderance of the evidence to prove that while in the course and scope of her employment she received an injury as defined in the court's charge. The trial court has considerable discretion in the decision of submission of issues in a worker's compensation trial; the manner of submission in this case was a variance from the pattern jury charges. The trial judge fashioned the issue and submitted "injury" and "producing cause" in one issue; because of

his dual submission in one issue, an extended analysis of the facts is necessary. The following issue was submitted:

Answer only the questions that you are specifically instructed to answer. Your answers should be in the form indicated following each question. When the answer called for is a date, state the month, day, and year.

| QUESTION | ANSWERS |
|---|---|
| 1. Did Bobbie Jean Chavis receive an injury on or about April 7, 1989, in the course of her employment with the Texas Department of Human Services that was a producing cause of any total and/or partial incapacity? | |
| A person may not be totally and partially incapacitated at the same time. | |
| Answer "Yes" or "No" to *each*. | |
| Total Incapacity | NO |
| Partial Incapacity | NO |

If you have answered "yes" to total incapacity in Question 1, then answer Question 2. Otherwise, do not answer Question 2.

The trial court gave the jury the following definitions:

"Injury" means damage or harm to the physical structure of the body and such diseases or infections as naturally result from such damage or harm.

"Injury" also includes any incitement, precipitation, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing, by reason of such damage or harm.

"Injury" also includes any damage or harm arising out of the medical or surgical treatment instituted to cure or relieve the effects of the injury.

"Injury in the course of employment" means any injury having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his

employer, whether on the employer's premises or elsewhere.

"Producing cause" means an efficient, exciting, or contributing cause from an injury or condition which, in a natural sequence, produces incapacity and without which cause such incapacity would not have occurred when it did. There may be more than one producing cause of incapacity, but there can be only one sole cause of incapacity. If Bobbie Jean Chavis' incapacity, if any, is solely caused by a pre-existing condition, independent of and not aggravated by her injury in question, then her alleged injury of April 7, 1989, cannot be a producing cause of any incapacity.

In worker's compensation claims, two distinct and independent theories of recovery are recognized by the courts, accidental injuries and occupational diseases. An accidental injury is defined by the courts as one traceable to a "definite time, place, and cause." *Olson v. Hartford Accident & Indemnity Co.*, 477 S.W.2d 859, 859–60 (Tex. 1972); *TEIA v. Cross*, 358 S.W.2d 156 (Tex. Civ.App.—San Antonio 1962, writ ref'd n.r.e.). Unlike an accidental injury, an occupational disease (1) arises from a gradual and slow onset, not traceable to a definite time, place and cause; or (2) arises from repeated physical exposure or repeated physical traumas. *Schaefer v. TEIA*, 612 S.W.2d 199, 202 (Tex.1980). Occupational diseases result from a gradual exposure or cumulative development over time, or results from repetitious physical activity. *Cearley v. Royal Globe Insurance Co.*, 632 S.W.2d 942, 946 (Tex. App.—Fort Worth 1982, no writ).

Appellant attempted to prove bodily damage due to undue stress. Appellant testified:

So, this is what has damaged me and this is what I am trying to litigate and to prove, that I have been bodily damaged due to this undue stress; and the State is still saying no to me. They have never stopped saying no, and that's obvious. I wouldn't be here otherwise.

Appellant testified that on March 20, 1989, Ms. Pass gave her a job performance evaluation which concluded that appellant did not meet the requirements of her job. Once she got this evaluation, she felt depressed, lightheaded, couldn't see for moments, proceeded to start having severe chest pains, felt destroyed, her knees started buckling, and she experienced the most excruciating pain that she had ever experienced throughout her life.

Within the week of receiving this evaluation, she went to see Dr. Mendoza, who gave her some high blood pressure medication and nerve pills which took care of both the high blood pressure as well as the angina. On March 29, 1989, Dr. Mendoza gave her a disability certificate which stated that she was totally incapacitated from March 29, 1989, up through April 2, 1989. Appellant testified when she returned on April 2, 1989, she started having increased chest pains, and that on April 5, 1989, she really knew and felt that something was desperately wrong.

Appellant further testified that upon her return to work, the harassment by Ms. Pass escalated. Appellant was moved from her position as a PBX switchboard operator to working in the mail room, which required her to lift and pack heavy boxes under time pressure. On April 7, 1989, after lifting heavy boxes in the mail room, she alleged she began to experience excruciating chest pains. Appellant notified Ms. Pass about the pain and asked to leave work but Ms. Pass refused, saying she would not find someone to replace Chavis. Finally, appellant entered the hospital for extensive diagnostic testing. As a result of the alleged stress and overexertion appellant experienced on the job, she suffered what was initially diagnosed as a heart attack and later diagnosed as (1) acute unstable angina, (2) hypertensive heart disease with possible coronary artery disease, (3) situational stress disorder, (4) hyperthyroidism, and (5) status post thyroidectomy. Appellant was declared "totally incapacitated" from April 29, 1989, and has never returned to work.

Appellant alleged that on April 7, 1989, she received an accidental injury. Appellant also states in her pleadings that she "suffered similar injuries on April 5, 1989."

Dr. Edward Gripon testified as follows:

Q. Dr. Gripon, can Mrs. Chavis go back to work today?

A. No, sir, not in my opinion. I don't think she could sustain gainful employment.

Q. How would you describe her capacity? Is she partially incapacitated from working, or is she totally incapacitated from working?

A. I think she's totally incapacitated from any significant employment.

Q. And can the reason for that incapacitation of employment be traces back to April 7th, 1989?

A. Yes, sir. Since I saw Bobbie Chavis initially in May of '89, she has not emotionally been able to work since that time. That continues to be the case at this point in time. I would be very pessimistic about her likelihood of returning to work.

The doctor further testified:

Q. So, is it fair for me to represent to the Jury that your primary treatment is on anxiety and depression; correct?

A. Yes, sir.

. . . .

Q. Without going through all of these medical records, do these medical records indicate to you that Mrs. Chavis has not suffered from—I'm dealing with the physical side—physical harm or damage to the structure of the body?

A. Well, at least one that's—you know, can be seen on these tests, the answer is certainly no. We can't ever say that the effect of stress on someone, for instance, doesn't damage a certain part of the body. But we don't have any technique—you know, you can't do a living autopsy; so, you can't say that there is no effect of that. But at least structurally with the types of tests that we can do, you know, there is no obvious adverse effect.

Dr. Mendoza testified by deposition:

Q. You haven't found any damage to Mrs. Chavis' heart in the years that you've been treating her, have you?

A. No, sir.

There was conflicting evidence that appellant did not receive a physical injury on April 7, 1989.

■ The law on the subject of stress-related injury is adequately expressed in the following two cases. In *Shannon v. Texas General Indem. Co.*, 889 S.W.2d 662 (Tex. App.—Houston [14th Dist.] 1994, no writ), we find:

Here, Appellant claims she sustained a mental injury for which she can receive workers' compensation benefits. Under the Texas Workers' Compensation Act, an insurance carrier is liable for an employee's condition which arises in the course and scope of employment. TEX.REV.CIV. STAT. ANN. art. 8306 § 3b (Vernon 1967). Compensation may be had for either an injury or an occupational disease "Injury" is defined as "damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom." TEX.REV.CIV. STAT. ANN. art. 8306 § 20. An "occupational disease" is one which occurs "as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment."

Mental trauma can produce an accidental injury if there is proof of a definite time, place, and cause. *Brown v. Texas Employers' Ins. Ass'n*, 635 S.W.2d 415, 417 (Tex.1982); *Transportation Ins. Co. v. Maksyn*, 580 S.W.2d 334, 338 (Tex.1979). However, when there is no evidence of a particular event causing the injury, there can be no recovery under workers' compensation. *Brown*, 635 S.W.2d at 416. Additionally, a mental condition caused by a gradual buildup of emotional stress over a period of time is not compensable as an occupational disease without accompanying physical force or exertion. *Maksyn*, 580 S.W.2d at 338 (quoting *Ayer v. Industrial Comm'n*, 23 Ariz.App. 163, 531 P.2d 208 (1975)). In other words, there is no recovery for "repetitious mental traumatic activity," as distinguished from physical repetitious activity. *Maksyn*, 580 S.W.2d at 335.

. . . .

In contrast, although Appellant has claimed a traumatic injury, the summary judgment proof offered by Appellee establishes that Appellant has failed to show an event traceable to a *definite* time, place,

and cause. Appellant claims in her pleadings that she received an injury, but she does not allege in the pleadings that the injury is mental. Further, she has failed to allege a definite time, place, or cause. *Id.* at 664–665. (emphasis in original) (footnotes omitted)

In *Dir., State Emp. Wkrs. Comp. v. Camarata,* 768 S.W.2d 427 (Tex.App.—El Paso 1989, no writ), we find:

Appellee contends that the showing of this memo on September 30, 1985 resulted in the injury suffered by him and that it occurred while in the course and scope of this employment. Appellee testified that the memo was *unfairly directed at him,* was also inaccurate and resulted in devastation to him. It was so upsetting that he struck his fist against some computer print-out paper.

The evidence before the jury was that this event resulted in Appellee seeing Dr. Luiz Natalicio, a psychologist and Dr. Jack Butler, a psychiatrist. Appellee's complaints to the doctors consisted of nocturia (frequent urination), weakness of the legs, low back pain, blurred vision, loss of sleep, severe anxiety and sleep problems. Both doctors testified that the Appellee had been adversely affected and "injured" by the memo of September 30, 1985. Dr. Butler diagnosed Appellee's condition as "post-traumatic stress syndrome," the same disorder that affects a large number of Vietnam war veterans. . . .

. . . .

The Appellant selected a Dr. Arthur Ramirez, a psychiatrist, to conduct a medical examination of Appellee and acknowledged that Appellee had "suffered a condition as a result of the incident on September 30, 1985 [the memo]." The trial court, without objection, submitted a definition of "injury" or "personal injury" which included the following.

A mental trauma can produce an accidental injury so long as there is proof of a definite time, place and cause.

We agree that mental trauma can produce an accidental injury so long as there is proof of a definite time, place and cause. *Transportation Insurance Company v. Maksyn,* 580 S.W.2d 334, 338 (Tex.1979). Medical testimony as well as the Appellee's testimony was sufficient to trace Appellee's problems to a particular event (the memo) and therefore supported the submission of the issues and the findings of the jury.

*Id.* at 429.

Here, appellant was required to prove by the preponderance of evidence that she received (1) an injury on April 7, 1989, (2) in the course of her employment (3) which was a producing cause (4) of incapacity.

Appellant attacks the legal sufficiency of the "No" finding on an issue upon which she had the burden of proof. We must treat her legal sufficiency contentions as if she were asserting that she had established her position as a matter of law and she must demonstrate that the evidence conclusively established all vital facts in support of the issue. In reviewing a "matter of law" challenge, the court employs a two-prong test. First, we examine the record for evidence supporting the finding, while ignoring all evidence to the contrary. Second, if no evidence supports the finding, we examine the entire record to determine if the contrary proposition is established as a matter of law.

Since appellant also challenges the factual sufficiency of the evidence to support the jury finding upon which she had the burden of proof, we examine the record to see if *some* evidence supports the finding and, if so, whether the finding is either so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust or that the great preponderance of the evidence supports the opposite conclusion. Further, we may not reverse even if we conclude that the evidence preponderates toward a finding, but only if a detailing of the evidence shows that the great weight of the evidence supports an affirmative finding. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

A review of this evidence reveals that there is some evidence contrary to the finding of "No" injury and producing cause. However, a review of the complaint as being against the great weight and preponderance

of the evidence is not supported as we have also found that there is some evidence to support the finding.

Here appellant bore the burden of proof and persuasion on the issue of injury and producing cause and sought to discharge this burden with her own "interested testimony" which the jury was not bound to accept. Appellant further offered the opinion of doctors that the jury was not bound to accept. Appellant's symptoms were dependent upon her verbal description of "subjective" conditions, whereas there were no directly observable or "objective" evidence that the source of appellant's condition was the result of the particular incident in question. Some of the appellant's conditions were pre-existing and of long standing. We conclude that this record reflects substantial evidence which would have supported a jury's conclusion either way, the evidence being in conflict, hence, the conclusion that the jury did not find for the appellant is not manifestly unjust. *Middleton v. Palmer,* 601 S.W.2d 759, 766 (Tex.Civ. App.—Dallas 1980, writ ref'd n.r.e.).

We overrule appellant's point of error one.

■■■ Appellant's second point of error urges "[t]he trial court erred in allowing the issue of sole cause to be submitted in the jury charge because it confused the jury and amounted to an improper comment on the evidence."

Appellant urges that the definition of "sole cause" should not have been given to the jury. Appellant states that "over the objection of Chavis's attorney, the trial court allowed a submission of a 'sole cause' instruction." Appellant's attorney first stated he had no objections to the charge, then later stated he wanted to object to the definition of "injury." The record reflects no other objection to the jury instructions were raised by appellant.

In order to preserve a complaint for appellate review, a party must present to the trial court a timely objection stating the specific grounds for the ruling he desires the court to make. Tex.R.App. P. 52(a). Furthermore, Tex.R. Civ. P. 272 requires that objections to the charge to the jury must be presented to the trial court in writing or dictated to the court reporter in the presence of the judge and opposing counsel. Appellant has waived review of this point of error. *See Lone Star Ford, Inc. v. Hill,* 879 S.W.2d 116, 121 (Tex. App.—Houston [14th Dist.] 1994, no writ). Point of error two is overruled.

Point of error three complains "[t]he trial court erred in allowing exhibits and questions to be introduced by the defendant in violation of the order in limine."

■■■ The very thrust of appellant's complaint in point of error three is directed to violations of the motion in limine. A motion in limine is not a valid substitute for an objection or motion to strike. On appeal, the party may not predicate his complaint on a motion in limine. *See Methodist Hospitals of Dallas v. Corporate Communicators, Inc.,* 806 S.W.2d 879, 883 (Tex.App.—Dallas 1991, writ denied).

In *Hartford Accident & Indemnity Co. v. McCardell,* 369 S.W.2d 331, 335 (Tex.1963), our Texas Supreme Court held:

> If a motion in limine is overruled, a judgment will not be reversed unless the questions or evidence were *in fact* asked or offered. If they were *in fact* asked or offered, an objection made at that time is necessary to preserve the right to complain on appeal that such questions asked or such evidence tendered were so prejudicial that the mere asking or tendering should require a reversal.

■■■ A motion in limine merely precludes reference to certain issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury. *Sims v. State,* 816 S.W.2d 502, 504 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Accordingly, a trial court's ruling on motion in limine preserves no error. *Union Carbide Corp. v. Burton,* 618 S.W.2d 410, 415 (Tex. Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Gaspard v. Gaspard,* 582 S.W.2d 629, 631 (Tex.Civ.App.—Beaumont 1979, no writ).

■■■ Appellant alleges that appellee violated the motion in limine by introducing appellant's discrimination lawsuit and by asking her husband when he was last employed.

In regard to her discrimination claim, a search of this record reveals no questions being asked by the appellee pertaining to a discrimination suit. Appellant urges that this evidence was admitted by a general reference to a series of medical reports of the plaintiff's various hospital admissions. However, we find no reference toward discrimination suits other than detailed reports finding no objective symptoms to support the appellant's subjective complaints. We fail to find any mention of a discrimination suit, however, we do note that Plaintiff's Exhibit 63, containing the medical evidence of Dr. Mendoza in one of his medical reports, did refer to a discrimination suit. Appellant's failure to make timely and specific objections at the time evidence was offered constitutes a waiver of that complaint. *See* Tex.R.App. P. 52(a); Tex.R. Civ. Evid. 103(a).

As to the employment status of appellant's husband, the record reflects the following question propounded by appellee:

Q. When was the last time you were employed, Mr. Chavis?

MR. PETROU: Objection, Your Honor. I think this violates the motion in limine that we had earlier.

THE COURT: Sustained.

MS. MURRY: I have no further questions.

Although the trial court sustained appellant's timely objection to appellee's attempt to violate the motion in limine, appellant did not further move to have the jury instructed to disregard the question, and if successful, further move for a mistrial. Therefore, we find appellant did not properly preserve any alleged error. *Pool,* 715 S.W.2d at 637; *Ortiz v. Ford Motor Credit Co.,* 859 S.W.2d 73, 78 (Tex.App.—Corpus Christi 1993, writ denied). Point of error three is overruled.

Point of error four alleges "[t]he trial court erred in denying Chavis' motion for a new trial because jury misconduct occurred."

To establish jury misconduct, the complaining party must show misconduct occurred that was material and that, based on the record as a whole, probably resulted in harm. Tex.R. Civ. P. 327. A motion for new trial premised on jury misconduct must be supported by a juror's affidavit alleging that "outside influences" were brought to bear upon the jury. *Nelson v. Clements,* 831 S.W.2d 587, 591 (Tex.App.—Austin 1992, writ denied).

As a part of her motion for new trial, appellant attached the affidavit of Evis Marcotte. Mr. Marcotte, the sole dissenting juror, accused some of his fellow jurors of improper conduct (e.g., one juror "prayed about the case all night," one juror stated that "our taxes would increase," one juror stated that "insurance paid part of Mrs. Chavis' medical bills," and that one juror insisted that the proper standard of proof was "beyond a reasonable doubt.")

Since the 1984 amendment to Tex.R. Civ. P. 327, comments and statements made by a juror to the other jurors during the deliberations are internal deliberations and do not amount to "outside influence." *Kendall v. Whataburger, Inc.,* 759 S.W.2d 751, 755 (Tex.App.—Houston [1st Dist.] 1988, no writ).

To constitute outside influence, the source of the information must come from outside the jury. *Baley v. W/W Interests, Inc.,* 754 S.W.2d 313, 316 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Broadly speaking, it is not an outside influence if it occurs during jury deliberations or is part of the jury's mental process. Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.