**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed December 21, 2018.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

---

## NO. 14-18-01036-CV

---

### IN RE STATE OF TEXAS, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Cause No. 1049234**

---

## MEMORANDUM OPINION

On November 30, 2018, relator, the State of Texas, filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West Supp. 2017); *see also* Tex. R. App. P. 52. In the petition, the State asks this court to compel the Honorable Linda Storey, presiding judge of the County Civil Court at Law No. 3 of Harris County, to vacate her October 30, 2018 order granting a new trial.

We conditionally grant relief.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying suit is a statutory condemnation action by the State for the acquisition of 0.4450 acres owned by Fairfield Baptist Church ("Fairfield") for the expansion of U.S. Highway 290 in Harris County, Texas. The jury found the compensation owed is $567,493 and the trial court entered judgment based on the jury's verdict.

Fairfield moved for a new trial. The trial court signed an order granting a new trial because the State allegedly violated a motion-in-limine that the trial court claims it implicitly granted. The new trial order states in relevant part:

> After considering the briefing, the parties' arguments, the law, and the facts, the Court has determined that there is good cause to set aside the judgment entered in this case on March 26, 2018. Specifically, numerous violations of ltem No. 3 of this Court's Order in Limine either affected the verdict supporting the March 26 judgment or might reasonably have affected the verdict. . . .

> This Court implicitly granted Item 3 of Defendant's [Fairfield's] Motion in Limine on February 14, 2018. By granting Item No. 3, the Court "instruct[ed] counsel for each party and through said counsel, the parties themselves, as well as each of their witnesses, to refrain from stating, referring to, mentioning, or putting before the panel of potential jurors in voir dire examination or the jurors at trial, directly or indirectly, by argument, testimony, other references and in any form or in any manner whatsoever" "[a]ny evidence, testimony, or reference to any legal or factual contention not set forth or disclosed in Plaintiff's responses to Defendant's [the State's] request for disclosures under Rule 194.2 of the Texas Rules of Civil Procedure." Despite this

2

instruction, Plaintiff repeatedly adduced undisclosed testimony that Plaintiff's cure plan would improve the safety of Defendant's parking lot and that the layout of parking lot was not within the scope of an architect's expertise severely undermining the testimony of Defendant's most important witness, an architect.

Both categories of erroneously admitted evidence were crucial to a key issue in the case: which party's cure plan was sufficient to adequately restore the function of Defendant's property after the taking. Therefore, it is highly likely that the erroneously admitted evidence affected the verdict. . . .

First, Plaintiff's land planner repeatedly characterized a drive aisle that his plan eliminated as a "conflict point." This undisclosed opinion undercut Defendant's position that the destruction of the drive aisle would in fact harm the property by reducing circulation. Because Plaintiff unfairly surprised Defendant with this testimony, its witness never had the chance to defend its own characterization of the drive aisle. In a case hinging on which parking cure plan the jury preferred, this issue was of paramount importance. Plaintiff's violations challenging the qualifications of architects to opine regarding parking configuration were equally damaging, if not more so. Through these comments, repeated in the testimony of each of its witnesses and in closing argument, Plaintiff cast doubt on every opinion expressed by Defendant's primary trial witness—an architect.

Moreover, Plaintiff elicited some of the prohibited testimony using overly broad questions that were met with narrative answers, making it difficult for Defendant and the Court to adequately police the record. For example, Plaintiff's initial question referencing architects was: "We heard yesterday from an architect. Can you tell the jury what a land planner does?" Plaintiff's land planner then launched into a narrative about both architects and land planners that strongly suggested architects are only qualified to plan the "vertical component" of development. Plaintiffs appraiser compounded this error with additional unprompted testimony concerning architects. When asked

3

"You weren't involved in the preparation of that exhibit, were you?", he responded: "No. Parking would have been done by a land planner, and the building would have been done by architects." Plaintiff's "trial by ambush" approach made it difficult, if not impossible, for either Defendant or the Court to act in time to keep the numerous violations out of the record.

## STANDARD OF REVIEW

The trial court's broad discretion to grant a new trial is not limitless. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009) (orig. proceeding). "If the record does not support the trial court's rationale for ordering a new trial, the appellate court may grant mandamus relief." *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 749 (Tex. 2013) (orig. proceeding) (hereafter referred to as *Toyota*). "If, despite conformity with the procedural requirements of our precedent, a trial court's articulated reasons are not supported by the underlying record, the new trial order cannot stand." *Id*. at 758. *See also In re Bent*, 487 S.W.3d 170, 173 (Tex. 2016) (orig. proceeding). "Simply articulating understandable, reasonably specific, and legally appropriate reasons is not enough to sustain a new trial order; the reasons must be valid and correct." *In re BCH Dev., LLC*, 525 S.W.3d 920, 924 (Tex. App.—Dallas 2017, orig. proceeding) (citing *Toyota*, 407 S.W.3d at 759). We must conduct a careful "merits review" of the record. *See Toyota*, 407 S.W.3d at 759. Using a factual sufficiency standard, we will engage in a review of the entire trial record to determine whether it supports the trial court's reasons for granting a new trial. *See Bent*, 487 S.W.3d at 180. If the record does not support the trial court's stated reasons, then the trial court will have abused its discretion in granting a new trial. *See Toyota*, 407 S.W.3d at 761.

4

## ANALYSIS

The new trial order is not supported by the record for at least two reasons. First, the record does not show that the trial court expressly or implicitly granted the motion in limine that the State allegedly violated. Second, even if it is assumed that the limine was granted and the State violated it several times, such violations would not warrant a new trial because Fairfield either did not object at trial to the testimony of which it complains or the trial court overruled Fairfield's objections.

### A. Record Does Not Show that the Trial Court Granted the Motion In Limine the State Allegedly Violated

"To preserve complaint on appeal regarding a trial court's ruling on the admissibility of evidence, a party must make a timely objection and obtain a ruling before the testimony is offered and received." *Atl. Richfield Co. v. Misty Prods., Inc.*, 820 S.W.2d 414, 421 (Tex. App.—Houston [14th Dist.] 1991, writ denied). The record must show that that the trial court "ruled on the request, objection or motion, either expressly or implicitly." *See* Tex. R. App. P. 33.1(a)(2)(A). Accordingly, a violation of a motion in limine cannot be grounds for a new trial unless the record shows that the trial court granted the limine. *See Wilkins v. Royal Indem. Co.*, 592 S.W.2d 64, 67 (Tex. Civ. App.—Tyler 1979, no writ) (overruling points of error regarding the violation of a motion in limine because "[n]either the transcript, nor the statement of facts, nor the trial docket reflect any ruling, either oral or written, that the motion in limine had been granted; the transcript merely contains an unsigned order filed by appellant's attorney").

The sole basis of the new trial order is the State's alleged violations of item

5

number three in Fairfield's motion in limine, which sought to exclude testimony of any facts or opinions that were not disclosed in response to Fairfield's request for disclosure. The record does that show that the trial court granted that limine. At the pre-trial hearing of the parties' motions in limine, the trial court orally ruled on only three of Fairfield's motions in limine, which did not include limine number 3. Although the parties submitted proposed limine orders, the trial court did not sign a written limine order.

Fairfield admits in its briefing that "there was no explicit written or oral ruling on the motion in limine." Rather, Fairfield argues that the record shows that the trial court implicitly granted limine number 3. *See* Tex. R. App. P. 33.1(a)(2)(A). With reference to Fairfield's motion in limine, the trial judge stated at the pretrial hearing: "On this one I want to know what you have problems with. I don't care about the ones you agree on. Let's talk about the ones you don't agree on." After ruling on the disputed items, the trial court took up the State's motion in limine, stating: "Again, what do you not agree with?" The trial court never expressly ruled on any of the agreed items from either party's motion in limine. Fairfield argues that it must be inferred from this record that the trial court implicitly granted all items in the motions in limine that the parties did not contest at the hearing.

An implied ruling must be clear from the record. *See Seim v. Allstate Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam). "An implied ruling can be found only where the trial court's actions or other statements in the record unquestionably indicate a ruling." *Davis v. State*, No. 14-03-00585-CR, 2006 WL 2194708, at *3 (Tex. App.—Houston [14th Dist.] Aug. 1, 2006, no pet.) (not designated for

publication). Generally, a trial court's ruling on objections to evidence is not implicit in its judgment on the merits. *See Trevino v. City of Pearland*, 531 S.W.3d 290, 299 (Tex. App.—Houston [14th Dist.] 2017, no pet.). In *Seim*, 551 S.W.3d at 165–66, the Texas Supreme Court indicated the implication of a ruling must be "clear" and that the mere granting of a summary judgment does not imply that the trial court ruled on objections to the summary judgment evidence. The supreme court quoted with approval our court's decision in *Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), stating:

> We believe the better practice is for the trial court to disclose, in writing, its rulings on all objections to summary[-]judgment evidence at or before the time it enters the order granting or denying summary judgment. Practitioners should facilitate this procedure by incorporating all parties' objections to summary[-]judgment evidence in proposed orders granting or denying summary judgment .... This practice will direct the trial court's attention to the matter[ ] and serve as a reminder to the court to disclose its rulings on all objections to summary[-]judgment evidence at the time it issues its ruling on the summary[-]judgment motion.... In any context, however, it is incumbent upon the party asserting objections to obtain a written ruling at, before, or very near the time the trial court rules on the motion for summary judgment or risk waiver.

551 S.W.3d at 165–66. It is likewise incumbent on a party seeking a limine order to obtain either a written ruling or a clear oral ruling on the record. Parties should not be put in the position of having to speculate as to whether a limine has been granted.

That the trial court only requested to hear argument on the contested liminies does not necessarily mean that the court granted all uncontested liminies because the trial court had discretion to deny a limine even if it is agreed to. Although Fairfield

7

filed a proposed written order on its liminies, it did not request the trial court to sign that order. We therefore conclude that the record does not show a "clear" implication that the trial court granted limine number 3.

Further, the trial court did not notify the State that it had granted limine number 3 through either an oral or a written order. The State cannot properly be sanctioned by the grant of a new trial for violating an order of which it lacked notice. *See Toyota*, 407 S.W.3d at 761–62. The time for the trial court to have made clear its intention to grant limine number 3 was during the pre-trial hearing, not in a new trial order issued three months after the jury's verdict.

The trial court's new trial order constitutes a clear abuse of discretion because it is predicated entirely on the State's alleged violations of a limine order that the record does not show was expressly or implicitly granted. *See Wilkins*, 592 S.W.2d at 67; *Toyota*, 407 S.W.3d at 761 ("Because the record does not support the articulated reason, the trial court abused its discretion by granting a new trial on that ground").

## B. Fairfield Either Did Not Timely Object or the Trial Court Overruled its Objections

"A motion in limine merely precludes reference to certain issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury." *Chavis v. Dir., State Worker's Comp. Div.*, 924 S.W.2d 439, 446 (Tex. App.—Beaumont 1996, no writ) (citing *Sims v. State,* 816 S.W.2d 502, 504 (Tex. App.—Houston [1st Dist.] 1991, writ denied)). A trial court's ruling on a motion in limine does not preserve error. *See GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 619 (Tex.

1999); *Chavis*, 924 S.W.2d at 446 (citing *Union Carbide Corp. v. Burton,* 618 S.W.2d 410, 415 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e)). "[T]o preserve error as to an improper question asked in contravention of a sustained motion in limine, a timely objection is necessary. Otherwise, a trial court is denied the opportunity to make a curative instruction or mistrial ruling." *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 637 (Tex. 1986). "Failure to request the court to instruct the jury to disregard the inadmissible testimony results in waiver of the alleged error where the instruction would have cured the error." *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 659 n. 6 (Tex. 1989). A motion in limine preserves nothing for review; the complaining party must immediately object and also request the trial court to instruct the jury to disregard the evidence. *In re Wyatt Field Serv. Co.*, 454 S.W.3d 145, 161 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding). An instruction to disregard is generally sufficient to cure error. *Id.*

A trial court may not properly grant a new trial based on a violation of a limine order where the violation has been waived by a party's introduction of the evidence or failure to make a timely objection and ask for a curative instruction or a mistrial. *See Toyota*, 407 S.W.3d 755–56; *see also In re United Servs. Auto. Ass'n*, 446 S.W.3d 162, 175 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (a new trial cannot be properly granted based on the violation of a limine order when a party failed to object to the testimony when it was offered). For example, in *Toyota*, 407 S.W.3d 746, one of the grounds on which the trial court granted a new trial was Toyota's violation of a limine order excluding testimony that the deceased driver was not wearing a seatbelt. The Texas Supreme Court held that the record did not

support the trial court's new trial order because the plaintiffs waived this error by introducing such evidence; noting "where, as here, the party that requested the limine order itself introduces the evidence into the record, and then fails to immediately object, ask for a curative or limiting instruction or, alternatively, move for mistrial, the party waives any subsequent alleged error on the point." *Id*. at 756.

## 1. Background

This is a statutory condemnation case involving the State's taking of 0.445 acres of land out of property owned and operated by Fairfield as a church. The church property is improved with a sanctuary, an education building, and a student-ministries building. The State's taking ranges in depth from 61.93 feet to 68.11 feet along the subject property's US 290 frontage. An important issue at trial was the impact of the parking lost because of the State's taking on the market value of Fairfield's remainder property, including the cost to restore the property after the taking. At trial, to address the restoration of the property after the taking, Fairfield relied on an architect, Allison Marshall, and the State relied a land planner, Duane Hutson. Both experts recognized the need to address the parking lost because of the State's taking. Mr. Marshall concluded that, to restore the safe and efficient function of the property after the taking, Fairfield should demolish the front student-ministries building to allow the configuration of parking and circulation at the front of the property that existed before the taking to be restored on the remainder after the taking. In contrast, Mr. Hutson concluded that the site could be restored by simply shifting parking bays and drive aisles "to more efficiently replace the lost parking on the remainder tract."

10

Below is a discussion of the testimony of Mr. Hutson that Fairfield claims violated limine number 3 and whether Fairfield timely objected to such testimony.

**2. Testimony as to Conflict Points**

First, Fairfield alleges that Hutson violated limine number 3 by repeatedly testifying that the drive aisle currently crossing in front of the student-ministries building posed a safety hazard because it had conflict points where vehicles potentially intersected with other vehicles and pedestrians and that his plan cured these safety issues.

Mr. Hutson was asked many questions, without objection, regarding conflict points where the paths of vehicles potentially conflicted on the existing property. Mr. Hutson was first asked whether he contemplated conflict points in his land plan. No objection was made by Fairfield. Mr. Hutson was then asked at least six questions in a row about conflict points without objection by Fairfield, culminating in the admission of Exhibit 74A, which depicted Mr. Hutson's analysis of conflict points on the property. Fairfield did not object to the admission of Exhibit 74A.

Next, Mr. Hutson discussed how he addressed conflict points on the property after the State's acquisition. Again, no objection was made by Fairfield. Fairfield first objected to Mr. Hutson's testimony as "outside of the scope" when he was asked: "[i]n your opinion as a land planner, what happens to the conflict points when you connect the green space to the building?" However, after a bench conference, the trial court overruled Fairfield's objection, stating: "I'll allow him to answer the question. Your objection is overruled. You can handle whether or not it was disclosed or something he

11

is coming up with now in your cross-examination." The State's attorney then asked: "in your opinion as a land planner, are there more conflict points or less?" Fairfield raised the same objection, but the trial court overruled Fairfield for the same reason stated before. Mr. Hutson was not asked any more questions about conflicts points.

Fairfield waived any error by not timely objecting to Mr. Hutson's testimony regarding conflict points. *See Pool*, 715 S.W.2d at 637; *Toyota*, 407 S.W.3d 746, 755–56.

Fairfield argues that because its two objections regarding conflict points were overruled, it was not required to constantly repeat the objection when such objections would be futile. However, Fairfield's objections were too late because they came after most of Mr. Hutson's testimony regarding conflict points had already been heard by the jury, and Fairfield never requested the trial court to instruct the jury to disregard such testimony. Moreover, the trial court could not properly grant a new trial based on violations of a limine that the trial court refused to enforce during trial by overruling Fairfield's objections. The State cannot properly be sanctioned by a new trial order for offering testimony after the trial court has overruled the objection.

### 3. Testimony as to Architect's Lack of Qualifications

Second, Fairfield alleges that Hutson violated limine number 3 by testifying that that site planning, including the layout of a parking lot, was not within the scope of an architect's expertise. Fairfield's expert, Mr. Marshall, was an architect.

12

Mr. Hutson was first asked: "[w]e heard testimony yesterday from an architect. Can you tell the jury what a land planner does?" Fairfield did not object to this question. Mr. Hutson was next asked "[w]hat is the difference between an architect and a land planner in this context?" Again, Fairfield did not object to this question. When discussing parking spaces on the property, Mr. Hutson was also asked: "[w]hat differs in that process from what a land planner would do and what an architect would do?" Again, no objection was made by Fairfield. In fact, no objection was made by Fairfield until the State's attorney next asked: "[d]oes this depict a different process than what you went through in your land plan?" Fairfield objected to Mr. Hutson's testimony being "outside the scope of this witness." The trial court sustained this objection, and Mr. Hutson was not asked additional questions regarding this topic on direct examination.

In its motion for new trial, Fairfield complained about three statements made by Mr. Hutson regarding architects and land planners. Fairfield failed to object to any of these statements at trial and never asked the trial court to instruct the jury to disregard this testimony. Again, Fairfield waived any error regarding the admission of this testimony by not timely objecting to it. *See Pool*, 715 S.W.2d at 637; *Toyota*, 407 S.W.3d 746, 755–56.

### 4. Reasons Stated by the Trial Court in its Order for Not Finding Waiver Do Not Withstand Scrutiny

The new trial order states, "Plaintiff's 'trial by ambush' approach made it difficult, if not impossible, for either Defendant [Fairfield] or the Court to act in time to keep the numerous violations out of the record." Regardless of the frequency of the alleged violations, Fairfield was still required to object and request a curative instruction

13

after each violation to avoid waiver, which it failed to do. *See Toyota*, 407 S.W.3d at 760. Further, Fairfield's objections did not come until after almost all the testimony of which Fairfield complains had been heard by the jury. As the Texas Supreme Court has acknowledged, "[o]nce the evidence was in the record—without objection or a request that it be stricken or that the jury be instructed to disregard—it was in for all purposes and a proper subject of closing argument." *Toyota*, 407 S.W.3d at 760.

The new trial order states, "the overall effect of the many violations was not curable by instruction." The order, however, provides no explanation or support for this conclusion, which is contrary to the general rule— "When evidence is placed before the jury in violation of a motion in limine, an instruction to disregard is generally sufficient to cure error." *In re Wyatt Field Serv. Co.*, 454 S.W.3d at 161 (citing *In re B.W.*, 99 S.W.3d 757, 760 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). Further, had Fairfield objected to the first alleged violation of the limine and such objection been sustained, the additional alleged violations likely would not have occurred. Also, a curative instruction after the first alleged violation likely would have been effective. And regardless of whether a curative instruction would have been effective, Fairfield still had a duty to object whenever the alleged undisclosed opinions were solicited or offered, which, in almost every instance, Fairfield failed to do.

## CONCLUSION

The new trial order is not supported by the record for at least two reasons.[1]

---

[1] The State additionally argues that the new trial order is not supported by the record because (1) the record shows that the opinions at issue were disclosed and the State therefore did not violate limine number 3, and (2) the record does not show that the evidence of which Fairfield complains caused the

First, the record does not show that the trial court expressly or implicitly granted the motion in limine that the State allegedly violated. Second, even if it is assumed that the limine was granted and the State violated it several times, such violations would not warrant a new trial because Fairfield did not timely object to any of the testimony that the trial court cites in its new trial order or the trial court overruled Fairfield's objections. *See Toyota,* 407 S.W.3d at 760; *Weidner*, 14 S.W.3d at 364.

We therefore conditionally grant the petition for writ of mandamus and direct the trial court to vacate its order granting a new trial. We are confident the trial court will act in accordance with this opinion. The writ of mandamus shall issue only if the trial court fails to do so.

PER CURIAM

Panel consists of Justices Donovan, Wise, and Jewell.

---

rendition of an improper judgment. We do not reach these arguments because their resolution is not necessary to the disposition of this case.